11 U.S. 550
 7 Cranch 550
 3 L.Ed. 436
 PALMER
v.
ALLEN.
 March 16, 1813
 
 1
 Absent. TODD, J.
 
 
 2
 ERROR to the Supreme Court of Errors of the state of Connecticut, in any action of assault and battery and false imprisonment, brought by Allen against Palmer, who was a deputy marshal of the United States for the district of Connecticut and had served a process of attachment upon Allen, and committed him to prison for want of bail, without such a mittimus as is usual upon commitment on like process issuing from the state Courts.
 
 
 3
 Palmer pleaded a special justification under the writ of attachment issued out of the district Court of the United States for the district of Connecticut. His plea was, upon demurrer, adjudged bad, for want of shewing a mittimus; and that judgment was affirmed in the Supreme Court of Errors.*
 
 
 4
 The question was now submitted to this Court, who were furnished with copies of the following opinions, delivered in the Court below.
 
 
 5
 Opinion of judge Brainard, in which the majority of the Court below concurred.
 
 
 6
 'The original action was trespass, for an assault and battery, and false imprisonment, in which the Defendant in error was Plaintiff; and to which the Defendant below, now Plaintiff in error, pleaded specially—that he was a deputy to the marshal of the United States for the district of Connecticut, and in that capacity had in his hands to serve a writ of attachment issued under the authority of the United States, returnable to the district Court of the United States for the said district; in virtue of which he attached the body of the Plaintiff below—read the writ in his hearing, and for want of bail committed him to the keeper of the jail in New Haven, &c. with whom he left a true and attested copy of said writ and process which he avers to be the same imprisonment and pretended trespass complained of, &c. to which there was a demurrer and joinder in demurrer, and adjudged by the Superior Court to be insufficient. On which this writ of error is brought—plea nothing erroneous.''The first action was debt brought on a statute law of the United States for an alleged breach thereof.'
 
 
 7
 'Whether that law be constitutional or not, as it is unnecessary, it would perhaps be indecorous to discuss; and whether debt be the proper action to be brought on it or not, is unimportant for my purpose. The process was under a law, issued under the authority, in the hands of a marshal of, and returnable to a Court, all of the United States. The service appears to be arrest of the Defendants body, reading in his hearing, and for want of bail, commitment, &c. The authority of the jailer to receive and keep the Defendant, was a copy of the process without a mittimus.'
 
 
 8
 'Is this a justification? Is this a defence?'
 
 
 9
 'The first question is, in the state of Connecticut, in an action of debt, for instance, in point of service of an attachment returnable to a state Court, is a mittimus necessary to authorize a committment? If not, it settles this case, and there is manifest error. But if it be, the next question is, whether a mittimus be necessary in a process issued under the laws and authority of the United States, returnable to and cognizable by a Court of the United States, to be served in this state on a citizen of the same.'
 
 
 10
 'This proposition I think correct, that such is the constitution of the state of Connecticut, and from the infancy of her laws and jurisprudence has been.'
 
 
 11
 'That no man's person shall be imprisoned unless by judgment of Court, or direction and order of a magistrate.'
 
 
 12
 'In every instance of final process there is an order of commitment, a mittimus, contained in the body of the instrument, in the execution itself.'
 
 
 13
 'In all cases where the subject matter has been adjudged by a Court of competent jurisdiction, the officer's duty is pointed out and the extent of the debtor's or delinquent's liability is ascertained, the result is made, the end is known.''On attachments, it will be agreed on all hands, that a man shall not be committed to prison, if he procure reasonable bail of the reasonableness or sufficiency of this bail, who is to judge? Is the officer in all instances? I apprehend not.'
 
 
 14
 'In case of an attachment, the direction to the officer indeed is, for want of estate, to attach the body of A. B. and him safely keep and have to appear before the Court. But the mode of this safe keeping and having to appear is pointed out and provided for by law.'
 
 
 15
 'The most ancient statute I find on the subject, entitled 'An act for regulating jails and jailers,' says, that no person or persons whatsoever shall be committed to prison, although arrested or seized by attachment, execution, or any other writ, or for non-payment of rates, debts or fines, or for any misdemeanor or capitol, or criminal offence, or any other cause, without a mittimus, granted and signed by civil authority, declaring the cause and ground of his commitment, requiring the jailer to receive and keep such person or persons in the prison until discharged according to law.'
 
 
 16
 'In a subsequent statute passed in May, 1706, entitled 'An act concerning officers levying executions,' it is enacted, that when any officer shall have a writ of execution to levy, &c. and doth seize the body, &c. and commit him to prison; a copy of the writ or execution signed by the officer and delivered to the jailer, shall be sufficient warrant or order for him to receive such person, and him hold in safe custody till delivered by law.'
 
 
 17
 'In the revision of the statutes, in the year 1750, the phraseology of the former statute was altered, and the latter was incorporated with it, under the title of 'An act concerning arrests and imprisonments for debt, damages, fines, &c. This statute has remained the same ever since, and its reading in relation to this subject is—That no person or persons for the non-payment of rates, fines, debts, or for any crime or offence, shall be committed to prison, without a mittimus granted and signed by civil authority, declaring the cause and ground of his commitment, requiring the jailer or keeper of the prison, to receive and keep such person or persons in the prison, until discharged according to law, unless where any proper officer, for want of estate, seize the body or bodies of any person or persons by an execution or distress or warrant for fines and rates, and commit him or them to prison, in which case a copy of the execution or distress attested and signed by such officer, and delivered to the jailer or keeper of the prison, shall be a sufficient warrant or order for him to receive such person or persons, and him or them to hold in safe custody till delivered by law.'
 
 
 18
 'From the broadness of the ancient statute it is apparent that in relation to all process, civil or criminal, mesne or final no person could be committed to prison without a mittimus, an instrument stating the cause, ordering the reception, and directing the detention signed by a magistrate, or as the expression is, civil authority.'
 
 
 19
 'In 1706, it occurred to the legislature that part of this provision was unnecessary; that in final process there was a mittimus in relation to that subject from the highest authority: hence the legislative dispensation, with mittimus in cases of executions.'
 
 
 20
 'When the legislature in 1750, incorporated the latter statute, which had made a distinction between final and mesne process, into the former, can it be supposed that they intended to narrow the grounds of the ancient provisions and regulations?'
 
 
 21
 'At the revision in 1750, it also occurred to the legislature, that there were other cases than executions where a mittimus, in the sense generally understood, would not only be unnecessary, but improper; hence the exemption was extended to distress or warrants for fines or rates.'
 
 
 22
 'The present statute says, that no person for the nonpayment of rates or fines, shall be committed to prison without a mittimus, unless indeed a distress or warrant for such rates and fines has been granted by proper authority, having competent jurisdiction.'
 
 
 23
 'The word debts in the statute still remains to be satisfied with a fair and reasonable construction. The original title of the act, was an act concerning arrests and imprisonments for debt, damage, fines, &c. Suppose the reading to be that, in an action for debt, no person shall be imprisoned without a mittimus. This would comprehend all actions of debt in a proper and technical sense, of course the present.'
 
 
 24
 'But this I suppose is too narrow a construction. The true meaning is commensurate with all actions by attachment, which sound in or claim debt or damage, and which by the process of a Court may be reduced into debt or damage. In all which cases, while in mesne process, before adjustment, there shall be a mittimus to authorize a commitment, after which, when liquidated, the execution speaks the order of the Court.'
 
 
 25
 'But the statute, since its existence in its present form, seems pretty generally to have had an uniform practical construction; the best comment perhaps that can now be made upon it. So far as I can learn, it has received in practice, in relation to mesne process, the same construction that was given to the former statute in relation to the same subject, and which the words of that statute absolutely and necessarily require. Both under the former and present statute, in all cases of attachment, a mittimus has been deemed necessary to authorize a commitment'
 
 
 26
 'But the second and perhaps more important question remains.'
 
 
 27
 'In a mesne process by attachment for debt, issued under the law and authority of the United States, returnable to a Court of the United States, to be served on a citizen of this state, within the same, to authorize a commitment, is a mittimus necessary?'
 
 
 28
 'The United States have a right to prescribe what mode of service for their own processes they may deem proper; and if they have pointed out a mode, that mode must be pursued: if they have not, it should seem fair reasoning to conclude that they had left that subject to the existing regulations of the several states. The United States have a statute, entitled 'An act for regulating processes in the Courts of the United States,' in which, section 2d, volume 2d, laws of United States, page 103, it is enacted, 'that the form of writs, executions and other processes, except their style, and the forms and modes of proceeding in suits at common law, shall be the same as are now used in the said Courts respectively, in pursuance of the act, entitled 'An act to regulate the processes in the Courts of the United States.'
 
 
 29
 'What those forms and modes are the statute no where specifies, other than by the above reference; and the same statute expressly repeals the whole of the act referred to.'
 
 
 30
 'On recurrence however, to that statute, we find it there enacted, 'That the forms of writs, &c. and modes of process in the Circuit and District Courts, in suits at common law, shall be the same in each state respectively, as are now used or allowed in the Supreme Courts of the same.'
 
 
 31
 'But it has been said, that mittimus is no part of the process. If I am correct in my conclusion on the first point, it is, by the law of tlus state, a part, and essential to the completion, of service in case of commitment.'
 
 
 32
 'If part of the service, it is part of the process—process in one sense is the method taken by law to compel a compliance with the original writ, by giving the party notice to obey it; a warning to appear in Court at the return of the original writ. On failure of obedience, further process is said to be had by attachment, &c.'
 
 
 33
 'I understand that the word process, as used by the legislature of the United States, in the statute referred to, is to be received in its broadest and most extensive sense. It is to be taken for all proceedings, in any action from the beginning to the end.'
 
 
 34
 'Mode of process includes mode of service. Whatever is necessary to complete the service of a writ returnable to a state Court, is by that statute made necessary to complete the service of a writ returnable to a District or Circuit Court. A mittimus is as necessary in the one case as in the other.''But it may be said, that there is no provision in the laws of the United States for procuring a mittimus: that of course there may be a failure of justice. When the legislature of the United States referred to the laws of the several states, they were bound to know them and to make provisions correspondent with them; and I am not prepared to say that they have not. I am not prepared to say, that it would not be the duty of the judge and justices of this state, on application of the marshal, to grant a mittimus. Besides, they have in each district at least one judge peculiarly their own. Sufficient is it that they have the power of making all necessary provision. They do in many instances call into their service the judges and justices of the State Courts, and make them pro hac vice their own: such as taking bonds of recognizance in cases of prosecutions for breaches of the laws of the United States, and various other instances. But in the words of a great man and eminent judge, 'If the law does not work right, let the legislature mend it; it's their business.—I am of opinion that there is no error.'
 
 
 35
 Opinion of Judge Baldwin, in which Judge Swift concurred.
 
 
 36
 'I differ in opinion, only on the necessity of a mittimus, for a legal commitment by the marshal of the United States, for the Connecticut district, on an attachment for debt.'
 
 
 37
 'I am of opinion, that a mittimus is not necessary by the statute of Connecticut, to authorize a commitment on attachment, in any civil cause, and if it were, it is doubted whether it would be obligatory on the marshals of the United States.'
 
 
 38
 'Before proceeding to give the reasons for my opinion on either of these points, I would remark, that it is presumed it will not be contended that the marshals are bound by a mode of proceeding which may have been used by the executive officers of the state, unless the same was required, or has been sanctioned, by the laws of the state.'
 
 
 39
 'If the practical construction of the state officers, can give a binding effect to the statute of the state on them, which the letter does not require; I apprehend that a contrary construction, by the marshals, sanctioned by the subsequent act of Congress in 1792, requiring that the forms of proceedings in suits, should be the same in future, as had then been adopted, and used in pursuance of the former act, will be equally binding on them.'
 
 
 40
 'I do not know, that there has ever been a judicial construction of the statute in question. I admit, that the practice among our state officers, (through abundant caution) has been to commit, by mittimus, in all cases of arrests, except on executions: but it will also be admitted, that the practice was never followed by the marshals of the United States.'
 
 
 41
 'Ever since the establishment of the judiciary of the United States, a period of more than twenty years, they have uniformly committed, in cases of attachment, by copy of their writ; we ought then, as the question now comes up for judicial decision, to give the proper effect to the provisions of the two statutes, independent of such practical constructions.'
 
 
 42
 'I will then examine, whether the statute of Connecticut requires a mittimus for commitment on attachments?'
 
 
 43
 '1. This statute, owing to repeated alterations and compilations, from materials enacted at different times, is not explicit, or very intelligible, its history will probably give some aid in its construction.'**
 
 
 44
 'As early as 1650, it was enacted that no man's person should be arrested, or imprisoned for any debt or fine, if satisfaction could be found from his estate.'
 
 
 45
 'At that time no arrest, or attachment of the person, was allowed for debt.' 'The ordinary process was by summons, and on default, of appearance, an attachment for the contempt, issued by order of the court.'
 
 
 46
 'By subsequent provisions, and particularly at the revision in 1672, an attachment was allowed as an original process in certain cases, and the form was then given. In 1702, the Plaintiff was allowed a summons, or an attachment at his option, in all civil actions.'
 
 
 47
 'In 1693, a mittimus was first required, to authorize a commitment and at the revision in 1702, it was extended and made necessary in all cases civil, or criminal. The words are, 'that no person, shall be committed to prison, although arrested or seized by attachment, execution, or any other writ, or for non-payment of rates, debts or fines, or for any misdemeanor, or capital, or criminal offence, or any other cause, without a mittimus.' &c.
 
 
 48
 'Inconvenience was soon experienced, and in 1706, a commitment by copy, was authorized, in case of arrest on execution.'
 
 
 49
 'At the revision in 1750, the statute took its present shape, viz. 'That no person shall be arrested and imprisoned, for any debt, damage, or fine, where sufficient means of satisfaction can otherwise be found from his estate. Provided, that no person, for the non-payment of rates, fines or debts, or for any crime or offence, shall be committed without a mittimus, granted and signed by civil authority,' &c. 'unless the body has been taken by execution, or distress, or warrant for fines or rates, in which case a copy of the execution or distress, attested, and signed by the officer, and delivered to the jailer, shall be a sufficient warrant or order.' &c.
 
 
 50
 'By omitting in the last statute, in the clause requiring a mittimus, the expressions 'arrested by attachment, or any other writ, or any other cause,'—and by adding to the exception, 'an arrest by distress or warrant,' for which a copy only is requested, it is evident, the legislature meant to limit the necessity of a mittimus. By the letter of the act as it now appears, it is not required on an attachment for tresspass, tert, case, or any other civil cause, unless it is on an attachment for debt, and it can hardly be presumed, that the legislature would thus dispense with it in all other cases, and retain in that; or that under an expression of doubtful import, they meant to include all manner of attachments.'
 
 
 51
 'All doubt, it appears to me will be removed, by giving that meaning to the word debt, as here used, which it had when first introduced into the statute, before an attachment of the person was allowed on mesne process in any case.'
 
 
 52
 'It there evidently means a judgment debt, (for there could then be no arrest for non-payment of any other,) in which sense it will include as well damages recovered for tort, as for money due on contract.'
 
 
 53
 'As no mention is made in the existing statute, of mesne process by attachment in any case, and the word debt, cannot apply to the variety of demands which may be the subject of attachment, and as no reason can be assigned, why that alone should be selected, I conclude the legislature, when they altered the statute, did not mean to include any arrest, by attachment, on mesne process.'
 
 
 54
 'The terms also of the ancient statute were, that no person shall be committed without a mittimus, although arrested by attachment, or for non-payment of rates, debts, or fines.'
 
 
 55
 'Those of the present statute are only, that no person for 'non-payment of rates, debt, of fines,' shall be committed without a mittimus, unless by executions, &c. The first makes a distinction between a commitment on attachment, and a commitment for non-payment of a debt, &c. a distinction which is obvious. At the time of the attachment, no debt is ascertained—the officer has no power to collect any. He is merely to secure the appearance of the person attached, before the proper Court to try the question of indebtedness. The officer has no power to commit, if the person attached will procure bail for his appearance, if not, he is to be imprisoned, not for the non payment of the debt, but to secure his appearance at Court.—Whether he is in debt, is a question sub lite, to say he withholds the debt, is to prejudge the cause. I am therefore of opinion, that the non-payment of the debt mentioned in the statute, has no reference to mesne process, and that there is no occasion by our statute for a mittimus, to commit in any case except for crimes. Such I contend is the true construction of the statute in question, and such I think is the construction all would give it, if a different practice of our officers had not created a doubt.'
 
 
 56
 '2. If it were evident that our statute required a mittimus in such case, doubts are entertained whether it is applicable to the process of the United States.'
 
 
 57
 'It seems to be agreed, that the mittimus, required by our statute, must be 'granted and signed by civil authority' of this state. This they are neither authorized nor compelled by any law either of the United States, or of this state to do in such case.'
 
 
 58
 'In cases, where it is deemed necessary for the civil authority of this state, to aid in executing the laws of the union, power is specially given them to do so;—as in all cases of a criminal nature, and in taking depositions, &c.—but there is no authority given to them, or duty imposed on them as magistrates, to aid the execution of their civil process,—and to expect it of them, or leave it optional with them to give or withhold the aid, would be derogatory to the general government.'
 
 
 59
 'They are an independent sovereignty.—Their officers must have all the power incident and necessary to the execution of the duties of their offices.'
 
 
 60
 'By a statute of this state, passed in 1794, stat. p. 368. 'permission is given to marshals and other officers of the United States, to use our jails, to confine persons under the authority of the United States, with the same authority in the keeping of prisoners, under the authority of the United States, as the keepers of said jails, under the authority of this state have.' The effect is, and was intended to be, to take away all control or responsibility, from keepers of the jails, under the authority of this state, as to prisoners confined by the authority of the United States. The prison keeper of the sheriff, as such, has no power to receive a prisoner under the authority of the United States. He must have a special power from the marshal, to enable him to act as keeper under their authority. Such part of the prison, as may at any time be used for such purpose, by the officers of the United States, is as distinct from the other, and from the control of the state officers, as though it were a distinct building.—Neither the sheriff nor the county are responsible for the safekeeping of the prisoners. The keepers may be, and some times are, different; or if the same person is the keeper of both, he acts in different capacities, and under different authority.'
 
 
 61
 'Hence I infer, that the keeper of the prison of the United States, has no power to commit on civil process by the authority of the state, nor, I contend, have the civil authority of the state any power to require it, and yet if a mittimus is necessary by our statute, it must be 'granted and signed by civil authority,' of the state, directed to the keeper of the jail of the United States, commanding him by authority of the state of Connecticut, to receive and hold the prisoner, under the authority of the United States, I may add also, that if the mittimus is to be considered as a writ or process, included in the act of Congress, its form must be that of commitment, but the style, that of the United States, that is—it must issue by the authority of the United States, bear test of the proper judge, and be sealed and signed by the clerk, but in such case, it would not have the requirements of our statute, by being granted and signed by civil authority of the state; and the United States have no analogous civil authority to execute the power.'
 
 
 62
 'Does it then follow as has been said, that the process by attachment must be abandoned? I think not.—The party, claiming a debt, has a right to the advantages of such a writ, and when the officer shall have done his duty, in making the arrest, if no provision is made by law, directing the mode of commitment, he must take a reasonable course, such as would be sanctioned by the principles of the common law, and such as was probably used before we had any law requiring a mittimus in any case.'
 
 
 63
 'Having arrested the prisoner by legal process, the officer became responsible for his appearance at Court, and, on failure to procure bail, he was bound to hold him in custody. His place of custody is the prison.'
 
 
 64
 'The same warrant which commanded the arrest, required the officer to keep his prisoner safely, so that he might be had before the Court. The officer was therefore authorized to commit. Still it is reasonable and proper, that the keeper of the prison, should be able to shew the cause and ground of the commitment, and of his holding the prisoner in custody.—This he will be enabled to do more fully, and more satisfactorily, by the copy of the process, and the doings of the officer thereon, than by the mittimus usually granted. This is the course required by our statute, on commitment by execution, distress, or warrant, and is that which I apprehend the common law in similar cases would require.'
 
 
 65
 'It therefore, appears to me, that on either ground, and most clearly, on the first, there was no occasion of a mittimus, to complete the justification of the officer, and that his plea was sufficient, and ought so to have been adjudged.'
 
 March 16th.
 
 66
 JOHNSON, J. delivered the opinion of this Court, as follows:
 
 
 67
 This suit comes up from the state Court of Connecticut, to reverse a judgment of that Court. The Defendant here brought an action below, against Palmer, and recovered damages for a supposed assault and false imprisonment. The facts of the case were these: Palmer is a deputy marshal, and in that capacity, arrested the body of Allen, on a writ sued out by the United States, to recover a penalty which Allen was charged with having incurred by a violation of a law of the United States. In this suit bail was demanded, and upon Allen's failing to give it, he was committed to prison. The illegal act with which Palmer was charged, was committing the Defendant to jail without a mittimus from a magistrate. It appears that it is the practice of that state, and in this case the majority of the judges decided it to be the law, that such a mittimus must be obtained, before a Defendant in a civil suit can be committed to prison. The practice however in the Courts of the United States in that district, has been the reverse.
 
 
 68
 To this action the Defendant pleaded a justification; and on demurrer, the state Court adjudged the plea insufficient, for want of setting forth such a mittimus; no question was made of the correctness of taking the body of Allen, or detaining him, until he should give bail. It was supposed that the law of the United States which enacts, that the form of writs, executions, and other processes 'and the forms and modes of proceeding in suits of common law, shall be the same as are now used' in the state Courts respectively; gives efficacy to the laws of Connecticut on this subject, and imposes upon the officers of the United States an obligation to conform their conduct to the provisions of those laws.
 
 
 69
 But this Court are unanimously of a different opinion. The plea made out a sufficient justification and ought to have been sustained as such. A writ, known to the jurisprudence of that state, issues to the marshal in the alternative, commanding him to attach the goods of the Defendant to a certain amount, and for want of such goods, to take his body: under this writ, not only in conformity to the literal meaning, but according to the established usage and received opinions of that state, the officer was sanctioned in taking the person of the Defendant into actual custody—and the 56th section of the collection law of March 2d, 1799, expressly authorizes a demand of bail. Detention therefore, until bail was given, was strictly authorized by law, and the defence to the assault and imprisonment was complete. Committing the Defendant to the state prison, was but one mode, and the least exceptionable mode of detaining his person, and if it was not so, it would only be the ground of a special action on the case against the officer for mal-treatment, or oppression.
 
 
 70
 But it is equally clear to this Court, that the law above alluded to commonly called the process act, does not adopt the law of Connecticut, which requires the mittimus in civil cases. This is a peculiar municipal regulation, not having any immediate relation to the progress of a suit, but imposing a restraint upon their state officers in the execution of the process of their Courts, and is altogether inoperative upon the officers of the United States, in the execution of the mandates which issue to them. The judgment below must be reversed, and judgment entered for the Defendant.
 
 
 
 *
 The following judges being present; Mitchell, Ch. J. Swift, Trumbull, Edmond, Smith, Brainard, Baldwin and Ingersoll, judges Swift and Baldwin dissented, and Ingersoll gave no opinion, having been counsel in the cause.
 
 
 **
 Stat. Conn. latest revision, printed in 1808. Index heads mittimus reference to arrests, No 5, 6, page 58—and in notes there.—Also execution No. 17, stat. p. 283, Sec. 5.
 See title, actions, civil, page 31, Sec. 1, and in notes there.