## Ex parte Boyd.

1. A party in whose favor judgment is rendered in a common-law cause, by a court of the United States sitting in the State of New York, is, in order to reach the property of the judgment debtor, entitled to the remedy provided by the statute of that State. and known as proceedings supplementary to execution.
2. Section 916 of the Revised Statutes which authorizes, as a matter of procedure, the resort to that remedy is not in conflict with the Constitution.

Petition for a writ of *habeas corpus.*

The facts and the statutes bearing upon the question involved are set out in the opinion of the court.

*Mr. Roger M. Sherman* for the petitioner.

*The Solicitor-General* for the United States.

Mr. Justice Matthews delivered the opinion of the court.

It is made to appear, by this application, that a judgment was recovered in the Circuit Court for the Southern District of New York, in favor of the United States against Robert Boyd, the petitioner, and Francis O'Rourke, on which execution was issued and returned unsatisfied, except in the sum of $200, leaving due thereon $8,128.92. It was thereupon ordered by the court, on motion of the plaintiff's attorney, that the matter be referred to Joseph M. Deuel, Esq., a commissioner of the court, " to examine the said Robert Boyd and Francis O'Rourke, and take answers on oath concerning their property, and to reduce such answers and examination to writing, and also to examine on oath, concerning such property, such witnesses as may be offered by the respective parties, and reduce such examination to writing, and report such answers and examination, and all his proceedings under and by virtue of this order, to this

court with all convenient speed, and the said Deuel is hereby appointed a referee in this action for the purpose aforesaid. And it is further ordered that the said Robert Boyd and Francis O'Rourke do appear before the said referee at his office in the Post Office building, New York City, on the 22d of May, 1879, at eleven o'clock A. M., to answer before said referee concerning their property as aforesaid ; and for that purpose to appear before the referee from time to time as he shall direct and appoint."

The petitioner moved the court to vacate this order, for illegality, which motion was denied. Being required to submit to the examination, he refused to take an oath to testify under said order, whereupon, on motion of the attorney for the United States, the Circuit Court ordered that he be attached and committed to the custody of the marshal, as punishment for a contempt of the court in so refusing to be sworn. From that imprisonment the petitioner seeks to be discharged, and to that end prays for a writ of *habeas corpus*.

The grounds on which the right to this relief is founded are set forth in his petition, as follows : —

" Your petitioner is informed and believes that proceedings supplementary to execution, wherein your petitioner is restrained of his liberty, are not, by the laws of the State of New York, a remedy in common-law causes to reach the property of the judgment debtor allowed in actions at law in the courts of the United States by sect. 916 of the Revised Statutes of the United States ; but, on the contrary, that these proceedings are, by the laws of the State of New York, prescribed as part of a code to abolish common-law causes, as such, and to amalgamate and indiscriminate common-law causes and suits in equity, and to confer upon the courts of that State, indifferently, in the same action powers in actions at law and in equity. Your petitioner is informed and believes that the application of this provision of that code to the courts of the United States is not authorized by any act of Congress, and is in conflict with the provisions of Article III., sect. 2, of the Constitution of the United States, which preserves and establishes the distinction between relief at law and in equity. Your petitioner, therefore, avers and charges that the said Cir-

cuit Court was and is wholly without jurisdiction in the prem-
ises, and that, therefore, all its proceedings therein are null
and void."

The material portions of the present statutes of New York
referred to, and which were in force at the time of the adop-
tion of the Revised Statutes of the United States, are as
follows : —

"PROCEEDINGS SUPPLEMENTARY TO EXECUTION.

"SECT. 292. (1.) When an execution against property of the
judgment debtor, or of any one of the several debtors in the same
judgment, issued to the sheriff of the county where he resides or
has a place of business, . . . is returned unsatisfied in whole or in
part, the judgment creditor, at any time after such return made,
is entitled to an order from a judge of the court . . . requiring
such judgment debtor to appear and answer concerning his property,
before such judge at a time and place specified in the order,
within the county to which the execution was issued. . . .

"(3.) On an examination under this section, either party may
examine witnesses in his behalf, and the judgment debtor may be
examined in the same manner as a witness.

"(5.) No person shall, on examination pursuant to this chapter,
be excused from answering any question on the ground that his
examination will tend to convict him of the commission of a fraud ;
but his answer shall not be used as evidence against him in any
criminal proceeding or prosecution. Nor shall he be excused from
answering any question on the ground that he has, before the
examination, executed any conveyance, assignment, or transfer
of his property for any purpose ; but his answer shall not be used
as evidence against him in any criminal proceeding or prosecu-
tion.

"SECT. 295. Witnesses may be required to appear, and testify
in any proceedings under this chapter, in the same manner as
upon the trial of an issue.

"SECT. 296. The party or witness may be required to attend
before the judge, or before a referee appointed by the court or
judge ; if before a referee, the examination shall be taken by the
referee, and certified to the judge. All examinations and answers
before a judge or referee, under this chapter, shall be on oath.

"SECT. 297. The judge may order any property of the judgment

debtor, not exempt from execution in the hands either of himself
or any other person, or due to the judgment debtor, to be applied
towards the satisfaction of the judgment.

"SECT. 298. The judge may also, by order, appoint a receiver of
the property of the judgment debtor, in the same manner, and with
the like authority, as if the appointment was made by the court, ac-
cording to sect. 244*. But before the appointment of such receiver
the judge shall ascertain, if practicable, by the oath of the party or
otherwise, whether any other supplementary proceedings are pend-
ing against the judgment debtor, and if such proceedings are so
pending, the plaintiff therein shall have notice to appear before him
and shall likewise have notice of all subsequent proceedings in rela-
tion to said receivership. No more than one receiver of the property
of a judgment debtor shall be appointed. The judge may also, by
order, forbid a transfer, or other disposition of the property of the
judgment debtor, not exempt from execution, and any interference
therewith. Whenever the judge shall grant an order for the ap-
pointment of a receiver of the property of the judgment debtor,
the same shall be filed in the office of the clerk of the court of the
county where the judgment-roll in the action . . . is filed; and the
said clerk shall record the order in a book to be kept. . . . A cer-
tified copy of said order shall be delivered to the receiver named
therein, and he shall be vested with the property and effects of the
judgment debtor from the time of the filing and recording of the
order as aforesaid. The receiver of the judgment debtor shall be
subject to the direction and control of the court in which the judg-
ment was obtained, upon which the proceedings are founded. . . .
But before he shall be vested with any real property of such judg-
ment debtor a certified copy of said order shall also be filed and
recorded in the office of the clerk of the county in which any real
estate of such judgment debtor, sought to be affected by such order,
is situated, and also in the office of the clerk of the county in which
such judgment debtor resides.

"SECT. 299. If it appear that a person, or corporation, alleged
to have property of a judgment debtor, or indebted to him, claims
an interest in the property adverse to him or denies the debt, such
interest or debt shall be recoverable only in an action against such
person or corporation by the receiver, but the judge may, by order,
forbid a transfer, or other disposition of such property or interest,
till a sufficient opportunity be given to the receiver to commence
the action, and to prosecute the same to judgment and execution;

but such order may be modified or dissolved by the judge granting the same, at any time, on such security as he shall direct.

" SECT. 300. The judge may, in his discretion, order a reference to a referee agreed upon by the parties, or appointed by him, to report the evidence or the facts, and may, in his discretion, appoint such referee in the first order, or at any time.

" SECT. 302. (1.) If any person, party or witness, disobey an order of the judge or referee, duly served, such person, party or witness, may be punished by the judge as for a contempt. (2.) And in all cases of commitment under this chapter . . . the person committed may, in case of inability to perform the act required or to endure the imprisonment, be discharged from imprisonment, by the court or judge committing him, or the court in which the judgment was rendered, on such terms as may be just."

Section 916 of the Revised Statutes, which repeats, in this respect, the provisions of sect. 6 of the act of June 1, 1872, c. 255, " to further the administration of justice," is as follows: " The party recovering a judgment in any common-law cause, in any Circuit or District Court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor as are now provided in like causes by the laws of the State in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such Circuit or District Court, and such courts may from time to time, by general rules, adopt such State laws as may hereafter be in force in such State in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

This provision of the Revised Statutes merely embodies and extends the principle contained in the fourteenth section of the act of Sept. 24, 1789, c. 20 (1 Stat. 81), which, with the subsequent legislation of Congress in furtherance of it, has been repeatedly the subject of consideration in this court. *Palmer* v. *Allen*, 7 Cranch, 550; *Wayman* v. *Southard*, 10 Wheat. 1; *Bank of the United States* v. *Halstead*, 10 id. 51; *Boyle* v. *Zacharie*, 6 Pet. 648; *Beers* v. *Haughton*, 9 id. 329; *Ross* v. *Duval*, 13 id. 45; *United States* v. *Knight*, 14 id. 301; *Duncan* v. *Darst*, 1 How. 301; *McCracken* v. *Hayward*, 2 id. 608; *Homer* v. *Brown*, 16 id. 354.

It is the settled doctrine of this court, as established and explained by these authorities, that the power of Congress, under the Constitution, as well as that of the courts of the United States, acting under its authority, extends to the adoption of the laws of the several States, not only as to the nature and form of writs of execution for the enforcement of judgments, but also as to *all proceedings thereupon*. As in *Beers* v. *Haughton* (*supra*), where it was held to include proceedings on the part of the judgment debtor, for his exoneration under insolvent laws of the State from imprisonment under a *ca. sa.*, and the consequent discharge from liability of the special bail.

It is contended, however, on behalf of the present petitioner, that the proceedings under which he has been committed to the custody of the marshal and restrained of his liberty, in their origin and nature are of equitable jurisdiction exclusively, as distinguished from proceedings at common law, which, by the prohibitions of the Constitution of the United States, Congress cannot lawfully authorize the courts of the United States to administer except by bill in chancery.

The jurisdiction of the courts of chancery in New York, exercised prior to the adoption of its present code, which authorized a discovery of assets from a judgment debtor in aid of an execution, was statutory. It was conferred and defined by sects. 38 and 39 of tit. 2, art. 2, 2 Rev. Stats. of New York, 173–174. It was therein provided that " whenever an execution against the property of a defendant shall have been issued on a judgment at law, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery against such defendant, and any other person, to compel the discovery of any property or thing in action belonging to the defendant, and of any property, money, or thing in action due to him or held in trust for him; and to prevent the transfer of any such property, money, or thing in action, or the payment or delivery thereof to the defendant, except where such trust has been created by, or the fund so held in trust has proceeded from, some person other than the defendant himself. The court shall have power to compel such discovery and to prevent such transfer, payment, or delivery, and to decree satisfaction of the sum remaining

due on such judgment out of any personal property, money, or things in action belonging to the defendant, or held in trust for him, with the exception above stated, which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not."

It is said in argument, by Mr. B. F. Butler, in *Mitchell v. Bunch* (2 Paige (N. Y.), 606), that these provisions of the Revised Statutes were passed in affirmance of the doctrine of *Hadden v. Spader*, 20 Johns. (N. Y.) 554. That case, however, did not go upon any idea that a bill in equity would lie against a judgment debtor for a general discovery of assets, but merely upon the ground of a jurisdiction to discover and apply equitable assets specifically described; the question being, as it was put by Woodworth, J., "whether a debtor who has placed his funds in the hands of a trustee, where they cannot be reached by an execution at law, can put his creditor at defiance and enjoy the benefit of these funds, which ought to be appropriated to the payment of his debts."

This case was preceded by the decisions of Chancellor Kent in *Hendricks v. Robinson*, 2 Johns. (N. Y.) Ch. 283; *Brinkerhoff v. Brown*, 4 id. 671; and *McDermutt v. Strong*, id. 687.

In *Hendricks v. Robinson* (*supra*), the Chancellor said: "I have no doubt that this court can and ought to lend its aid, whenever that aid becomes requisite to enforce a judgment at law, by compelling a discovery and account, either as against the debtor or as against any third person who may have possessed himself of the debtor's property and placed it beyond the reach of an execution at law. The preliminary step which seems to be required is, that the judgment creditor should have made an experiment at law, and bound the property, by actually suing out execution;" citing *Angell v. Draper*, 1 Vern. 399; Lord Nottingham, cited in 1 P. W. 445; *Stileman v. Ashdown*, 2 Atk. 477; *Shirley v. Watts*, 3 id. 200.

In *Brinkerhoff v. Brown* (*supra*), he said that it was the settled rule in chancery that the plaintiffs must show that they have taken out execution at law and pursued it to every available extent against the property before they can resort to that court for relief; that the presumption is that the court which renders judgment is competent to enforce it; that, "if he seeks ..

aid as to real estate, he must show a judgment creating a lien upon such estate ; if he seeks aid in respect to personal estate, he must show an execution giving him a legal preference or lien upon the chattels." The opinion cites the case of *Taylor* v. *Hill* (1 Eq. Cas. Abr. 132, pl. 15), before Lord King in 1705, where the bill having been filed before execution for discovery of particular specified effects of the judgment debtor in the hands of a third person, a demurrer was allowed; but the Chancellor said it would not lie against the debtor himself, nor against a third person, to have a general discovery. And in *McDermutt* v. *Strong* (*supra*), the Chancellor said: " I regard the law to be clearly settled, that before a judgment creditor can come here for aid against the goods and chattels of his debtor, or against any equitable interest which he may have therein, he must first take out execution, and cause it to be levied or returned, so as to show thereby that his remedy at law fails, and that he has also acquired by that act of diligence a legal preference to the debtor's interest."

It is quite apparent from this review of the decisions upon the point in New York, prior to the adoption of the provisions of the Revised Statutes of that State on the subject, that the latter gave a much more extensive remedy than was supposed to exist by virtue of the customary jurisdiction of the Chancery Court, particularly in requiring, when sought, from a judgment debtor, a general discovery of assets, legal and equitable, for the purpose of enabling the judgment creditor to apply them to the payment of his judgment.

In *Mitchell* v. *Bunch* (*supra*), Chancellor Walworth seemed to regard the jurisdiction of chancery, independent of the statute, as equally extensive, and refers to the case of *Edgell* v. *Haywood and Dawe* (3 Atk. 352), decided by Lord Chancellor Hardwicke in 1746, as a direct authority in support of the bill in the case before him, and as a decision which had never been questioned; but the case before Lord Hardwicke was not that of a bill for general discovery, but for a discovery in respect to assets alleged to be in the hands of the co-defendant as executor, applicable to the payment of a legacy which belonged to the judgment debtor under a will, and which the complainant was entitled to have appropriated to the payment of his

judgment, by virtue of the provisions of the act of 10 Geo. II. c. 26, for the relief of insolvent debtors, under which the debtor's person had been discharged, as an insolvent, from liability to be taken in execution. The right to the remedy in equity in that case was put distinctly upon the ground that the method by which the judgment creditor might have reached the property of his debtor, by proceeding at law against his person, having been taken away by the statute, the choses in action were equitable assets which a Court of Chancery would appropriate to the benefit of his creditors.

Mr. Hare, in his Treatise on Discovery (c. 5, sect. 3, p. 84, ed. 1876), states that "there are some early cases which appear opposed to the rule which has been stated in the preceding sections, that a discovery will only be given to be used as evidence at a trial," but adds that "the cases which are cited in support of a jurisdiction of this nature seem to be chiefly bills for relief raising a different and substantive equity." He refers, however, to *Mountford* v. *Taylor* (6 Ves. Jr. 788) as a case where Lord Eldon seems to have acted upon the doctrine of a general right of the creditor to a discovery, in order to make his judgment available, in consequence of the admission of its correctness by counsel. That was the case of a bill by judgment creditors, who had sued out elegits for a discovery of freehold estates, charging that the defendant, upon his election as a member of Parliament, previously to the judgment, gave in his qualification, and that, if the estates composing it were conveyed away since, it was without consideration. The Lord Chancellor remarked on the hearing that he was not quite clear that such a bill must not allege that, at a given time, the defendant was seized of given lands (not simply suggesting, as a fishing bill, that at some time or other he had some land); and that he conveyed those lands away fraudulently to put them out of the reach of this creditor. Afterwards he overruled the demurrer, saying: "But the bill charges that the defendant delivered in a schedule of the particulars of his estates, whereby he made out his qualification, and that he has conveyed them without consideration, as evidence that he has lands liable to execution, as they may be unquestionably. Upon that I think he must answer."

It thus appears that the proceeding in aid of execution, in its present form in New York, as well as that in which it was administered under the Revised Statutes by the Court of Chancery, was a statutory process, and did not form any part of that jurisdiction in equity which, as vested in the courts of the United States by the Constitution, is assumed to be inalienable. And the remaining question, therefore, becomes, not so much whether Congress may, by appropriate legislation, transmute an equitable into a legal procedure, as, whether it can in any wise change the rules of pleading and procedure as to courts, either of law or equity, in force in England at the time of the adoption of the Constitution, or whether, by the adoption of that instrument, all progress in the modes of enforcing rights, both at law and in equity, was arrested and their forms forever fixed. To state the question is to answer it.

The conclusion will be not less clear, however, if we concede that the proceeding in question belongs historically, as to its form, to the administration of chancery courts. If we regard its nature, it will be perceived that it is, so far as it relates merely to the discovery of the debtor's assets, a collateral and auxiliary remedy. If the discovery results in ascertaining the existence of property, subject to levy under execution, then the remedy at law is perfectly restored. Or if, by lawful power over the person of the debtor, he may be compelled by a court of law to apply his property to the payment of his creditor's claim, the satisfaction is complete. If, on the other hand, other parties with adverse claims are revealed, or obstacles to the pursuit of the legal rights of the judgment creditor are brought to light, or the interests to be subjected are not cognizable at law, or the equities require to be marshalled, it may be that relief can only then be had in a court of equity, where all parties can be made to appear, all conflicting claims adjudicated, and the complete remedy moulded to fit the circumstances of the case.

But here we have nothing to do with any question but that of discovery. The only relief sought is, knowledge of property belonging to the debtor, applicable, either at law or in equity, to the payment of the creditor's judgment. What shall be done, after that knowledge has been acquired, is to be deter-

mined upon the circumstances as they may then appear, and cannot now be considered. For the proceeding for discovery is distinct and entirely separable from the subsequent relief, if any shall then be sought.

Now, it is of the essence of the jurisdiction of courts of equity, in bills of discovery merely, that it is in aid of the legal right; and it is a fundamental rule, prescribed for the exercise of that jurisdiction, in the words of Story (Eq. Jur., sect. 1495), that " courts of equity will not entertain a bill for discovery to assist a suit in another court, if the latter is, of itself, competent to grant the same relief; for in such a case the proper exercise of the jurisdiction should be left to the functionaries of the court where the suit is depending." It follows, then, that although at one time courts of equity would entertain bills of discovery, in aid of executions at law, because courts of law were not armed with adequate powers to execute their own process, yet the moment those powers were sufficiently enlarged, by competent authority, to accomplish the same beneficial result, the jurisdiction in equity, if it did not cease as unwarranted, would, at least, become inoperative and obsolete. A bill in equity to compel disclosures from a plaintiff or a defendant, of matters of fact peculiarly within his knowledge, essential to the maintenance of the legal rights of either in a pending suit at law, would scarcely be resorted to, unless under special circumstances, now, when parties are competent witnesses, and can be compelled to answer, under oath, all relevant interrogatories properly exhibited; nor to compel the production of books, deeds, or other documents, important as instruments of evidence, when the court of law, in which the suit is pending, is authorized by summary proceedings to enforce the same right.

But even conceding that such enlargements of the powers of courts of law do not deprive courts of equity of jurisdiction theretofore exercised, no one has ever supposed that they were illegitimate intrusions upon the exclusive domain of equity, or produced any confusion of boundaries between the two systems. No one has ever questioned the authority of Congress to make parties to a suit competent witnesses, or to confer upon courts of law power to compel the production of books

and papers, because discovery was an ancient head of equitable jurisdiction. It is the very office of the principle of equity to supply defects in the law, and it is not to be regarded as anomalous that the technical law should, in the course of its necessary development, incorporate into its own organization, improvements in procedure, first introduced as equitable remedies. It is this very capacity of parallel growth that constitutes and perpetuates the harmonious coexistence of the two departments of our jurisprudence. Its history furnishes many examples and illustrations of this tendency and of its results.

There is certainly nothing in the nature of an examination of a judgment debtor, upon the question as to his title to and possession of property applicable to the payment of a judgment against him, and of the fact and particulars of any disposition he may have made of it, which would render it inappropriate, as a proceeding at law, under the orders of the court, where the record of the judgment remains, and from which the execution issues. Such examinations are familiar features of every system of insolvent and bankrupt laws, the administration of which belongs to special tribunals, and forms no necessary part of the jurisdiction in equity. It is a mere matter of procedure, not involving the substance of any equitable right, and may be located, by legislative authority, to meet the requirements of judicial convenience. Whatever logical or historical distinctions separate the jurisdictions of equity and law, and with whatever effect those distinctions may be supposed to be recognized in the Constitution, we are not of opinion that the proceeding in question partakes so exclusively of the nature of either that it may not be authorized, indifferently, as an instrument of justice in the hands of courts of whatever description.

*Petition denied.*