**CAPITAL CO. v. FOX, and five other cases.**

Nos. 468–472.

Circuit Court of Appeals, Second Circuit.

July 27, 1936.

Robert P. Levis, of New York City, for appellants.

Cravath, De Gersdorff, Swaine & Wood, of New York City (Samuel B. Stewart, Jr., of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

These appeals are from orders denying motions to set aside subpœnas issued under section 779 (2) of the Civil Practice Act of New York (as added by Laws N.Y. 1935, c. 630) in proceedings supplementary to execution. On July 18, 1935, the plaintiff took judgment against the defendant, Fox, upon his confession in the sum of nearly $300,000; and on March 27, 1936, it served a subpœna on each of the appellants, five firms of stockbrokers in the

City of New York, and upon Berliner individually, a member of one of these. The subpœnas recited the entry of the judgment against Fox, and that the attorney for the plaintiff, the judgment creditor, had "reason to believe that the said party has property of the judgment debtor exceeding ten dollars in value." It commanded the person to whom it was directed, i. e., the "third party," to appear before the district court on April third, "to be examined under oath concerning property * * * of William Fox * * * in your possession now or at any time since January, 1929," which might be held either in his name or in the name of a number of persons designated; and it concluded with a direction "to produce at such examination all books, papers and records * * * which have * * * information concerning such property." This was verbatim the form prescribed by section 779 (2) and each subpœna was endorsed with a copy of section 781 of the Civil Practice Act (as added by Laws N.Y.1935, c. 630), which provides that the "third person is * * * forbidden to transfer * * * property belonging to the judgment debtor * * * until the further order of the court," and that anyone who violates "the provisions of such restraining provision, shall be subject to punishment by the court * * * as and for a contempt." Upon Berliner & Co. and Berliner, individually, the plaintiff also served ordinary subpœnas, which had no endorsement. All the "third parties" moved to set aside the subpœnas upon affidavits which asserted a privilege against the disclosure of any information in their possession regarding transactions with the persons named, who were their customers; but which did not deny that at some time they had had business with one or more of them. The plaintiff answered by affidavits alleging that a company, called the "All-Continent Corporation," made up of relatives and close associates of the defendant, Fox, had received $6,000,000 in cash from him at the end of the year 1930 and $870,000 later; that this money had in part been transferred back from that company to him; that he had a power of attorney to act in all the company's affairs as if its property was his own; that the company and the other persons named in the subpœnas were helping him to conceal his resources. The "third parties" replied with affidavits from Fox's wife and daughters denying that any of the property held by them belonged to him. The appeals from the orders denying these motions are based, first, upon the theory that the subpœnas constituted an unconstitutional search; second, that the injunction provided by section 781 of the Civil Practice Act of New York was issued without due process of law; third, that neither that section nor section 779 (2) applies to actions at law in the District Court of the Southern District of New York. The appellee moved to dismiss all the appeals and this is the first question to be decided.

◼ As we have already said, a copy of section 781 of the Civil Practice Act of New York was endorsed upon all the subpœnas but two, which gave them the effect of an injunction. When the "third parties" moved to vacate them, they therefore moved to dissolve an injunction, and the case was within section 227 of title 28 of the U.S. Code (28 U.S.C.A. § 227) unless it makes a difference that the statute, not the court, imposed the restraint. The justification for an appeal from decrees refusing to dissolve an injunction is as good when the statute imposes the sanction as when a court does. It is to give the person restrained a chance to review the restraint; and it can surely make no difference that this is initially imposed without the intervention of a court. Besides, after the court has, as here, refused after a hearing to dissolve the injunction, the difference between the situation and one where the court issued it originally is to the last degree formal. The subpœna being enforceable by attachment, we regard it as precisely like a court's order for purposes of appeal. The opposite is however true as to the two "witness subpœnas" against Berliner and Berliner & Co. These were mesne process in the action or special proceeding; had they been ancillary to an administrative proceeding they would have been final, because they would have completed the court's action. As it was, they were merely interlocutory steps in a judicial proceeding. That is the distinction between Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686, and Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L. Ed. 1036, or First National Bank of Mobile v. United States, 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796. The appeals from the "witness subpœnas" are dismissed; the motions to dismiss the other appeals are denied.

◼ On the merits the first objection is threefold: (1.) to the generality of the proposed examination; (2.) to the absence

of any supporting affidavit; (3.) to the direction to produce the documents in court. The proceedings supplementary to execution of New York, dating back as they do to the Revised Statutes, were not indeed on all fours with the preceding remedies given by the court of chancery to judgment creditors. Ex parte Boyd, 105 U.S. 647, 26 L. Ed. 1200. But there is no reason on that account why they should not be enforced here, and this applies as well to "third party" proceedings as to an examination of the judgment debtor himself. Until September 1, 1935, the law (old section 785, Civil Practice Act of New York), required the order of a judge to examine a "third party," supported by affidavit that he had "personal property" of the judgment debtor or was indebted to him. The examination was before the judge or. a referee, and was designed to pave the way for the collection of undiscovered or non-leviable assets. The need of an affidavit caused much difficulty, and often resulted in balking the statute, since the very reason for the examination was to find out those facts which the plaintiff was required to state in advance. For this reason a new subdivision was added to "Old section 785," now section 779 (as added by Laws N.Y.1935, c. 630), which dispensed with affidavit and order, and substituted a subpoena issued, like a subpoena ad testificandum, by the attorney, though supported by a declaration of his belief that the "third party" had property available upon the judgment. There can be no question of the purpose of the legislature, and while the Appellate Division for the Second Department has held in New York Credit Men's Association v. Schneider, 247 App.Div. 896, 286 N.Y.S. 978, that the judgment creditor must answer when the "third party" moves upon affidavit to vacate such a subpoena, that condition was here fulfilled. We do not understand that decision to mean that the court is to go back to the practice before the amendment and decide upon all the affidavits whether the judgment creditor has made out a prima facie case that an examination will prove justified. If so, the change was merely one of form, that is, in the time when he must comply with the old requirements. Until the Court of Appeals so rules we will not put so crippling an interpretation upon the amendment. Therefore the question resolves itself into one of power.

■■ It is quite true that to allow an uncontrolled examination into the affairs of anyone whom the judgment creditor might select would be oppressive; might indeed be so much so as to fall within the Fourteenth Amendment, U.S.Const. The statute does nothing of the kind; the examination is conducted before a judge or a referee, who is to keep it within bounds and exclude prying into irrelevant matters. Such a limitation will not serve the "third parties" at bar; in order to succeed they must maintain that they cannot be summoned to court at all. That position would be equally open to every witness, in every court, in every suit; consistently applied, it would completely frustrate the administration of justice. No authority is cited for so extravagant a pretension; we should not follow it, if it existed, unless it were authoritative upon us. These subpoenas perform the common office of a subpoena, so far as they merely require attendance and submission to examination. Nevertheless, as subpoenas duces tecum, they do require the production of books and documents, and that can be so oppressive as in effect to become an unlawful search. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. It must be remembered, however, that the subpoenas merely required the physical production of the documents in court; the extent of their inspection will be for the judge, like the scope of the oral examination. It is quite true that in equity inspection of documents was conditional upon some proof that they were relevant (Federal Trade Comm. v. American Tobacco Co., 264 U.S. 298, 306, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786); and we assume arguendo that that is still true; indeed it may be also true that a legislature could not constitutionally dispense altogether with that condition. But Hale v. Henkel, supra, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652, did not touch that question, but declared that a subpoena duces tecum might be so indefinite and the burden of production before the tribunal so onerous as to make it an unreasonable search. That is all that it did hold. Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 553, 554, 28 S.Ct. 178, 52 L.Ed. 327, 12 Ann. Cas. 658; Wheeler v. United States, 226 U.S. 478, 489, 33 S.Ct. 158, 57 L.Ed. 309; Brown v. United States, 276 U.S. 134, 142, 145, 48 S.Ct. 288, 72 L.Ed. 500. The subpoenas at bar were definite enough in what they called for; that is, the accounts of the brokers with the All-Continent Corporation, with its subsidiaries or its shareholders, and with others who there is prima facie reason to suppose have been acting

for the judgment debtor. The "third parties" do not suggest that the number of these documents is so great as to make their production a serious burden; they stand upon their supposed privilege not to disclose them because they are confidential, just as they do as to their oral examination. Such a privilege is unknown; the notion that a broker may stop inquiry relevant to a legal controversy by asserting that his duty to his customers should be preferred to his duty to testify, is without a vestige of authority or justification.

■ The next objection is that section 781 of the Civil Practice Act of New York is unconstitutional in imposing an injunction without a judge's order. If the statute affected to declare in advance of a hearing that the plaintiff's attorney might forbid the "third party's" transfer of any specific property under pain of contempt, there would indeed be much to say for that argument. It does not do so; it measures the extent of the prohibition by the judgment debtor's ownership of the property; the "third party" is forbidden to transfer only what property he owns, and cannot be punished without proof that any property thereafter transferred was the debtor's in fact. The statute therefore does no more than declare it unlawful to transfer a judgment debtor's property after notice and impose the penalty of contempt for disobedience. It anticipates no judicial decision; it merely creates a new class of unlawful acts, as statutes have done from time immemorial. We are not to be deceived by the fact that the command of the statute is called an injunction, or that it is punished by a court, not by trial to a jury.

■ The final objection is that section 779 (2) and section 781 have not been extended to actions in the district court. The effect of section 727 of title 28, U.S.Code (28 U.S.C.A. § 727), is first that state laws as they existed in 1872, touching execution or similar proceeding to reach a judgment debtor's property, apply to actions in federal courts; second, that "such laws which may subsequently be enacted and adopted by general rules of such district court," shall also apply, "and such courts may, from time to time, by general rules, adopt such State laws as may be in force in such State." Rule 5 of the Common Law Rules of the District Court for the Southern District of New York adopts such proceedings supplementary to execution "as now are or may be hereafter provided" by the laws of New York. This rule went into effect July 1, 1931, before section 779 (2) or section 781 was passed; and the question raised is whether it could thus incorporate them in advance of their enactment. The statute presupposes some action by the court, and so the Supreme Court has held (Lamaster v. Keeler, 123 U.S. 376, 8 S.Ct. 197, 31 L.Ed. 238) ; and the phrase, twice repeated, "by general rules," indicates that it may incorporate the whole procedure in bulk. That does not, however, settle whether under section 727, title 28, U.S.Code (28 U.S.C.A. § 727) the court must not periodically bring its practice up to date by new rules incorporating amendments. The language of the statute does indeed assume that there may be successive adoptions, but it does not inevitably forbid adoption in futuro. Since the court can proceed by "general rules," it would be a very barren requirement that demanded a new rule every time the state practice changed. That might have been the purpose of Congress, but we think it most unlikely, especially since the statute in its present form was part of the original Conformity Act (section 724, title 28, U.S.Code [28 U.S.C.A. § 724]). Rule 5 was in our judgment therefore justified by section 727. So construed both the rule and the section were constitutional. The Conformity Act (section 724, title 28, U.S.Code [28 U.S.C.A. § 724]), adopts the state practice "existing at the time," and it has been in force for nearly sixty-five years. It has never been suggested that it did not incorporate amendments to the state practice made after its successive re-enactments. Congress may not indeed delegate its powers to the states generally, but the doctrine is not universally true; in some matters it certainly may do just that. Hanover Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113; Butte City Water Co. v. Baker, 196 U.S. 119, 25 S.Ct. 211, 49 L.Ed. 409; Stellwagen v. Clum, 245 U.S. 605, 613, 38 S.Ct. 215, 62 L.Ed. 507; In re Rahrer, 140 U.S. 545, 11 S.Ct. 865, 35 L.Ed. 572; Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311, 330, 37 S.Ct. 180, 61 L.Ed. 326, L.R.A. 1917B, 1218, Ann.Cas.1917B, 845. It would be unsafe to generalize. In matters of substantive rights no doubt its power is more circumscribed than in those of procedure; and here at any rate long precedent has put the question at rest. The "third parties" reply that assuming this to be true, this was not a change in procedure but the grant of a new remedy. We should scarce-

ly accept the distinction as vital, if it existed, but it does not. Whatever may be thought as to the original remedies available to a judgment creditor in equity by creditors bill and how far the system of supplementary proceedings was an innovation (Ex parte Boyd, supra [105 U.S. 647, 26 L.Ed. 1200]), it had become settled in all its substance long before 1872 when Congress adopted it along with other state laws relating to executions. The changes which have come in since, especially those following the promulgation of Rule 5 of the District Court for the Southern District of New York, are only procedural details. If such matters may be adopted in advance of their appearance, as the Conformity Act bears witness, these changes might also be.

Orders affirmed as to all subpœnas except the "witness subpœnas" served on Berliner and Berliner & Co.; appeals dismissed as to these.