## LAMASTER *v.* KEELER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Argued November 18, 1887. — Decided December 5, 1887.

The provisions of Rev. Stat. § 914 relating to the practice, pleadings, and forms and modes of proceeding in common law causes in Circuit and District Courts of the United States do not apply to remedies upon judgments; but those remedies, being governed by the provisions of § 916, are confined to such remedies as were provided by the laws of the State in force when § 916 was passed or reënacted, or by subsequent laws of the State adopted by the Federal Court in the manner provided for in that section.

A confirmation by the court of a sale under execution will not cure an infirmity growing out of the nullity of the judgment under which it was had.

EJECTMENT. Judgment for the plaintiff. Defendant sued out this writ of error. The case, as stated by the court, is as follows.

This case comes before us from the Circuit Court for the District of Nebraska. It is an action of ejectment to recover a parcel of land in the city of Lincoln, State of Nebraska. The plaintiff below, the defendant in error here, traces title to the premises from a purchaser at a sale under an execution issued upon a judgment, extended by the clerk of the court so as to include certain sureties, and among them the defendant

below. The contention of the defendant is, that the extension of the judgment so as to include him was unauthorized and void, and that the execution and sale thereunder of his property was, therefore, without any force or validity.

The facts of the case, so far as it is necessary to state them for the disposition of the contention of the defendant below, are briefly these: On the 12th of November, 1875, Charles W. Seymour and William Wardell, as plaintiffs, recovered a judgment in the Circuit Court of the United States for the District of Nebraska, against one William P. Young, as defendant, for $6500 and costs. The defendant in that case, Young, being desirous of staying execution upon this judgment, obtained a bond, as the undertaking is termed, signed by five parties, of whom Lamaster, the plaintiff in error, was one, in which, after reciting the judgment recovered, they acknowledged themselves "security for the defendant for the payment of the judgment, interest, and costs, from the time of rendering said judgment, until paid, to be paid nine months from the rendering the same." Attached to this instrument was an affidavit of justification of all the parties signing it except Lamaster. Originally, his name was signed to the affidavit, but he had it cut off before the instrument was presented to the clerk. It is unnecessary to state the circumstances under which this was done or the effect of it (if any it had) upon his liability, as the case will be determined on other points.

The bond, so called, was approved by the clerk of the court, on the 2d of December, 1875, and filed; and thereupon he made in one of the books of record of the court, called "Judgment Index of the Court," the following entry: "Defendants, Lamaster, M. F., et al., surety; Plaintiffs, Seymour and Wardell, appearance. Docket 6, No. 138; date of judgment, Nov. 12, 1875; amount of judgment, $6500."

This entry was made by the clerk under the impression that the statute of Nebraska of February 23, 1875, entitled "An act to provide for stay of executions and orders of sale," was the law governing the stay of executions upon judgments in the Circuit Court of the United States. The third section of the statute provides for a stay of execution for a period of nine

months, upon judgments for the recovery of money only (with certain exceptions not material in this case), on condition that the defendant shall, "within twenty days from the rendition of judgment, procure two or more sufficient freehold sureties to enter into a bond, acknowledging themselves security for the defendant for the payment of the judgment, interest, and cost from the time of rendering judgment until paid."

The other sections which bear upon the questions involved are the following :

"Sec. 4. Officers approving stay bonds shall require the affidavits of the signers of such bonds, that they own real estate not exempt from execution, and aside from incumbrances, to the value of twice the amount of the judgment."

"Sec. 6. The sureties for the stay of execution may be taken and approved by the clerk, and the bond shall be recorded in a book kept for that purpose, and have the force and effect of a judgment confessed from the date thereof against the property of the sureties, and the clerk shall enter and index the same in the proper judgment docket as in the case of other judgments."

"Sec. 9. At the expiration of the stay, the clerk shall issue a joint execution against the property of all the judgment debtors and sureties, describing them as debtors or sureties therein." (See Laws of Nebraska of 1875, pp. 49–51.)

Upon the assumed sufficiency of the bond of the sureties, and of the above entry in the Judgment Index under the statute of Nebraska, the clerk, on the 14th of April, 1881, issued an *alias* execution to the marshal of the district, commanding him as follows :

"That of the goods and chattels, and for want thereof, then of the lands and tenements of William P. Young, debtor, and John I. Irwin, Jane Y. Irwin, W. T. Donovan, Milton F. Lamaster, and Nathan F. Moffit, sureties, in your district, you cause to be made the sum of four thousand seven hundred forty-four and $\frac{31}{100}$ dollars, being the balance due April 2d, A.D. 1881, on the judgment of the Circuit Court of the United States for the District of Nebraska, at the November term thereof, in the year 1875, by which Charles W. Seymour and

William W. Wardell recovered against the said William P. Young, with interest thereon from the second day of April, A.D. 1881, until paid, together with the further sum of ——, costs of increase on said judgment, and also the costs that may accrue on this writ. And have you the said moneys before the clerk of the said Circuit Court, at the city of Omaha, in said district, within sixty days, to be paid to the persons entitled to receive the same."

Under this execution, the premises in controversy, being a lot in the city of Lincoln, was, on the 17th of May, 1881, sold to one Thomas Ewing for the sum of $5600. A motion to set aside the sale having been denied, and the sale confirmed, the marshal's deed of the premises was made to the purchaser, and he conveyed them to the plaintiff.

The petition, the designation given to the first pleading, in the system of procedure in civil cases in force in Nebraska, sets forth the title of the plaintiff under the execution and sale mentioned, the detention of the premises by the defendant, and the receipt by him of the rents and profits to the amount of $3000, and prays judgment for the possession of the premises and for the rents and profits. The defendant pleaded that the conveyance from Ewing, the purchaser at the execution sale, to the plaintiff, was colorable and collusive, for the purpose of enabling the latter to commence and maintain an action for the recovery of the property in the Circuit Court of the United States. And in answer to the petition the defendant denied the validity of the bond, the extension of the judgment against him, and the proceedings thereunder; and also set up the pendency in the state court of a suit for the determination of his title to the premises.

Two trials of the case were had, which is permissible in actions of ejectment under the laws of Nebraska. On the first, the verdict of the jury was for the defendant; on the second, they found that the conveyance by the purchaser at the marshal's sale to Ewing, the plaintiff herein, was "merely colorable and collusive, and was made for the purpose of creating a case cognizable in the Federal Court, and the plaintiff was not the real party in interest, but that the action was being

prosecuted for the use and benefit of Ewing, and that Keeler is only a nominal and colorable party."

This verdict being set aside by the court, a third trial was had, which resulted in a general verdict for the plaintiff, under the instructions of the court. The question raised on the trial and decided by the court, upon the instruction refused and those given, related to the validity of the proceedings taken by the clerk upon the bond of the sureties, to authorize execution against their property, and the sale of the premises.

The defendant requested the court to instruct the jury that the statute of Nebraska respecting the stay of executions and orders of sale, approved February 23, 1875, "was not operative to authorize the execution against Lamaster's property;" but the court refused the instruction and charged the jury as follows: "That the filing of defendant's bond with the clerk of the court, and its approval by him, and his approval of the sureties thereto, including the defendant, the record of the same, the entry of memoranda thereof in the judgment index, called in the statute 'extending the judgment,' justified the issue by the clerk of the court of an execution upon the judgment of Seymour and Wardell against Young and others, directed to the marshal, commanding him to make the balance due upon the judgment out of the property of the principal and sureties, including that of the defendant Lamaster, and the sale by the marshal of the defendant's property under and by virtue of the execution, was authorized by law." And again, "that when the bond was taken by the clerk, as shown in evidence, and when the proceedings were taken thereon leading to the sale by the marshal of the property in question, the statute of this State, passed on the 23d of February, 1875, and entitled 'An act to provide for stay of executions and orders of sale,' was in force in the court, and was a law therein, the same as in the District Courts of the State."

And the court further instructed the jury to find a general verdict for the plaintiff.

To the refusal of the court to give the instruction requested, and to the instructions given, the defendant at the time excepted.

The jury found a verdict for the plaintiff; and to review the judgment entered thereon the defendant has brought the case here on a writ of error.

On the 30th of December, 1876, and not before, the Circuit Court of the United States for the District of Nebraska made the following order:

"Ordered, that the laws of the State of Nebraska, now in force, regulating the issuing of executions and of the proceedings to be had thereon and thereunder, be, and the same are hereby, adopted as the rule of procedure to enforce the collection of judgments in the United States Circuit and District Court for said State."

*Mr. John F. Dillon* and *Mr. George W. Doane* for plaintiff in error.

*Mr. J. M. Woolworth* for defendant in error.

I. The provisions of the statute of Nebraska were all complied with, except in one particular, noticed hereafter; that is to say, First, within twenty days from the rendition of the judgment, on the 25th of November, 1875, a stay bond was filed, and on the 2d of December, 1875, approved by the clerk; Second, this bond was signed by five sureties, four of whom showed by their respective affidavits that they were sufficient freeholders, whose real estate was not exempt from execution, and of the value of twice the amount of the judgment; Third, this bond was recorded in a book kept for that purpose, that is to say, Stay Bond Record 'A of the court; Fourth, the clerk entered and indexed the same in the proper judgment docket as in the case of other judgments; Fifth, after the expiration of the nine months, that is to say, on the 14th of April, 1881, the clerk issued a joint execution against the property of the judgment debtor, Young, and the parties obliged by the bond, describing them respectively therein as debtor and sureties.

The question presented at this point of the case is, whether these proceedings subjected the premises which were the property of Lamaster, to the lien of the judgment and to sale under

an execution issued thereon. The question was raised on the trial and saved.

Section 914 of the Revised Statutes (taken from the act of June 1, 1872), adopted as part of the jurisdiction of the Federal Court in Nebraska, the statute of that State, by virtue of which the proceedings here complained of were had. The words "modes of proceeding" in that section of the Revised Statutes were not new in 1872. They are found in all that class of acts. Section 2 of the act of 1789, for instance, which was the first of the series, provided "that until further provision shall be made . . . the forms of writs and executions, except their style, and *modes of process* . . . in the Circuit and District Courts, in suits at common law, shall be the same in each State respectively as are now used or allowed in the Supreme Courts of the same."

In 1792 an act was passed, the second section of which ran as follows: "The forms of writs, executions and other process, except their style, and the forms and *modes of proceeding* in suits, in those of common law, shall be the same as are now used in the said courts respectively, in pursuance of the act entitled 'An act to regulate processes in the courts of the United States.'" In *Wayman* v. *Southard*, 10 Wheat. 1, these statutes came before this court for construction, upon a certificate of division of opinion between the judges of the Circuit Court for Kentucky. A motion had been filed in that court to quash the marshal's return to an execution, issued on a judgment recovered therein, and also a bond taken upon the execution. The report does not state the facts very distinctly, but it appears that the marshal pursued the direction of a then recent statute of Kentucky, which provided for an appraisement of the property, and its sale at not less than three-fourths of its appraised value, and granting to the defendant time for the payment of the judgment. Chief Justice Marshall delivered an elaborate opinion, in which, after dealing with some matters not involved in the present inquiry, he considered with great care, whether the words "and modes of process," covered the proceedings of the marshal upon an execution. He reached the conclusion that the

words "'modes of proceeding in suits,' embrace the whole progress of the suit, and every transaction in it, from its commencement to its termination, which has been already shown not to take place until the judgment shall be satisfied. It may then, and ought to be understood as prescribing the conduct of the officer in the execution of process, that being a part of the 'proceedings' in a suit." In *United States* v. *Halstead*, 10 Wheat. 51, the same points were ruled.

In 1828, another act was passed, the language of which was as follows: "The forms of mesne process, except the style, and the forms and *modes of proceeding* in suits, in courts of the United States, held in those States admitted into the Union since the twenty-ninth day of September, in the year seventeen hundred and eighty-nine, in those of common law, shall be the same in each of the States, respectively, as are now used in the highest court, of original and general jurisdiction of the same." 4 Stat. 278.

In *Beers* v. *Houghton*, 9 Pet. 329, 361, and *Ross* v. *Duvall*, 13 Pet. 45, it is said, that this act was passed shortly after the decision in the case of *Wayman* v. *Southard*, *supra*, and was intended as a legislative sanction for the opinion in those cases, that the words "*modes of proceeding*" included all of the proceedings of the marshal upon an execution in his hands, down to the satisfaction of the judgment. See *Williams* v. *Benedict*, 8 How. 107; *Bank of Tennessee* v. *Horn*, 17 How. 157; *Georgia* v. *Atlantic and Gulf Railroad*, 3 Woods, 434; *Smith* v. *Cockrill*, 6 Wall. 756; *Moncure* v. *Zunts*, 11 Wall. 416; *United States* v. *Knight*, 3 Sumner, 358, 373.

But it is insisted that § 914 of the Revised Statutes does not authorize a summary judgment as against the surety on a stay bond, given by a judgment debtor in order to secure time for payment. There is a class of cases closely analogous to this, in which such remedies are sustained. *Hiriart* v. *Ballou*, 9 Pet. 156; *Smith* v. *Gaines*, 93 U. S. 341; *Amis* v. *Smith*, 16 Pet. 303; *Beall* v. *New Mexico*, 16 Wall. 535; *Moore* v. *Huntington*, 17 Wall. 417.

But the plaintiff in error insists that the law applicable to this case is not § 914, but § 916 Rev. Stat. The contention is

understood to be as follows: (1) The general words of § 914, "practice, pleadings, forms and modes of proceeding," are to be applied to what is not within the particular words of § 916, "the party recovering a judgment shall be entitled to similar remedies on the same by execution or otherwise." That is to say, all of the modes of proceeding in a suit are governed by the former section, until judgment has been recovered; and thereafter the proceedings are governed by the latter section. (2) It follows that the stay law of the State was not incorporated into the jurisprudence of the Federal Court, because § 916 was enacted in 1873 and the stay law was enacted in 1875; and no general rule of the Circuit Court had adopted the state statute when the proceedings here in question were had.

The premise of this contention is unsound, as appears from several considerations.

The first of these considerations arises upon the language of § 916, particularly as compared with the terms of § 914. We have already seen that the terms of § 914, as construed by this court in *Wayman* v. *Southard, supra,* and other cases, are broad enough to include process of execution and all the proceedings of the officer thereunder. The terms of the section are: "Practice, pleadings, forms and *modes of proceeding.*" These words, "*modes of proceeding,*" standing alone, include what was done under this execution. Now let us proceed to consider the language of § 916. In order to support the contention of the plaintiff in error, its terms must be such as qualify those of the former section. Several words deserve notice.

In the first place, it is expressly stated, concerning the object of the remedies, that they are "to reach the property of the judgment debtor." They do not secure any other benefit or advantage to either party. Consequently, when a bond is given by the debtor, with sureties, to stay an execution against his property, by the terms of which they become bound as he is bound, execution against their property is not within the terms or purpose of the provision. The execution against the sureties is not issued to reach his property.

Next, the parties in whose behalf the section is enacted are also to be noted. They are the plaintiffs in judgment, and not the defendants. The debtor is not the party in whose behalf the new remedies are provided. His interests are not within the words of the statute.

The nature of the new remedies supports the same view. The language is "by execution or otherwise." Proceedings which arrest the officer in issuing the writ and obeying its commands are not a remedy by execution. The words "or otherwise" apply to remedies of the same character as an execution, the object of which is to reach the property of the debtor and apply it to the satisfaction of the judgment; of which character are creditors' bills, proceedings supplementary to execution, garnishment of parties owing or holding the property of the judgment debtor, and other proceedings of like character, which within the last twenty-five years have been contrived in favor of plaintiffs. The terms of the section are abundantly satisfied by these new remedies, and ought not to be enlarged so as to trench upon and limit the significance of the words "modes of proceeding," in § 914.

2. The construction of the statutes, contended for by the defendant in error, is supported not only by a consideration of the precise terms of § 916, but by a consideration also of the prior legislation. The process acts of 1789 and 1792 contain no provision relating particularly to executions, or any other mode of final process. All such writs and proceedings were covered by the general words, "mode of process" and "mode of proceeding." Next came the special statute of 1824 relating to domain using the term "mode of proceeding," and then the act of 1828, already alluded to.

In 1872 an act was passed "to further the administration of justice" (17 Stat. 196). It contained no provision relating to final process. Its general terms, "modes of proceeding," were sufficient to provide therefor. This provision superseded and in effect repealed the provision above cited of the act of 1828. Not only were its terms ample to provide for what was covered by the third section of the former statute, but it directly conflicted therewith. The proviso of the said third section

vested in the courts the power at their discretion, by rule, to alter final process, so as to conform the same to changes which had been adopted by the state legislatures for the state courts. This power was taken from the courts by the act of 1872, and it was made compulsory upon them to follow the state practice. Therefore it repealed the former act.

Now what was done by the revisers? Out of § 5 of the act of 1872, they made § 914 of the revision. They framed §§ 915, 916, which are substantially the same as § 6 of the act of 1872. That section related only to attachment cases, or cases in which other process of a similar nature is issued. The act of 1872 left the matter of execution, except in attachment and like cases, to be governed by § 5. In 1873 the revisers divided this into two parts. The first part of § 6 they made § 915 of the Revised Statutes. The last part they made into § 916, but they changed the phraseology. In place of the words "in such cause," they inserted the words "in case of any common law cause." This brings us face to face with the question, whether the revisers intended that the operation of the fifth section of the act of 1872 should be modified and limited by the slight change made in reënacting the last clause of the sixth section of the same act; or did they mean to leave the terms of § 914 with all the force which they had under the settled judicial construction of its terms, and down to the time when they remodelled the statute, and to confine the terms of § 914 to such new remedies as had been devised by the state legislatures for the relief of judgment plaintiffs? The answer cannot be doubtful. We are bound to say, that under the operation of § 914, the state statutes are incorporated into and made a part of the Federal jurisprudence in the State, as well with reference to executions and the proceedings thereon as such other matters, as pleadings, amendments, times and orders of trial, and other like proceedings.

II. But this question is not an open one. The parties were concluded upon it when the decision of the court confirming the sale was made. The question above discussed was presented to the court, was ruled upon by it, its order of confirmation was appealable, and all this amounts to an estoppel of record.

Such an order of confirmation is not open to collateral attack. See *McKeighan* v. *Hopkins*, 14 Neb. 361; *Phillips* v. *Dawley*, 1 Neb. 320; *Crowell* v. *Johnson*, 2 Neb. 146; *State Bank* v. *Green*, 8 Neb. 297; *Berkley* v. *Lamb*, 8 Neb. 392; *Day* v. *Thompson*, 11 Neb. 123; *Neligh* v. *Keene*, 16 Neb. 407; *Orchard* v. *Hughes*, 1 Wall. 73; *Blossom* v. *Railroad Co.*, 1 Wall. 655; *Butterfield* v. *Usher*, 91 U. S. 246; *Findley* v. *Bowers*, 9 Neb. 72; *Gilbert* v. *Brown*, 9 Neb. 90; *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609; *Mather* v. *Hood*, 8 Johns. 44, 50; *Griswold* v. *Stewart*, 4 Cowen, 457; *Dyckman* v. *The Mayor, &c., of the City of New York*, 5 N. Y. (1 Selden) 435.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

The contention of the plaintiff below, the defendant in error here, that the act of Nebraska of February 23, 1875, governed proceedings for the stay of money judgments in the Federal courts of the Nebraska District equally as for the stay of such judgments in the courts of that State, and in like manner determined the liability of sureties upon bonds given for such stay, is founded upon the language of § 914 of the Revised Statutes, which is as follows:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

This section is a reënactment of § 5 of the act of June 1, 1872, "to further the administration of justice" (17 Stat. 196, c. 255), and was intended to assimilate the pleadings and the procedure in common law cases in the Federal courts to the pleadings and procedure used in such cases in the courts of record of the State within which the Federal courts are held. Much inconvenience had been previously felt by the profession from the dissimilarity in pleadings, forms, and modes of pro-

cedure of the Federal courts from those in the courts of the State, consequent upon the general adherence of the former to the common law forms of actions, pleadings, and modes of procedure; whilst the distinctions in such forms of action and the system of pleading and the modes of procedure peculiar to them had been in many States abrogated by statute. The new codes of procedure did not require an accurate knowledge of the intricacies of common law pleading; and to obviate the embarrassment following the use of different systems in the two courts the section mentioned of the act of 1872 was adopted. As said by this court in the case of *Nudd* v. *Burrows*, 91 U. S. 426, 441, its purpose "was to bring about uniformity in the law of procedure in the Federal and state courts of the same locality. It had its origin in the code enactments of many of the States. While in the Federal tribunals the common law pleadings, forms, and practice were adhered to, in the state courts of the same district the simpler forms of the local code prevailed. This involved the necessity, on the part of the bar, of studying two distinct systems of remedial law, and of practising according to the wholly dissimilar requirements of both. The inconvenience of such a state of things is obvious. The evil was a serious one. It was the aim of the provision in question to remove it. This was done by bringing about the conformity in the courts of the United States which it prescribes."

The general language of the section, in the absence of qualifying provisions, would comprehend all proceedings in a cause from its commencement to its conclusion, embracing the enforcement of the judgment therein. The court which has jurisdiction of a cause has jurisdiction over the various proceedings which may be taken therein, from its initiation to the satisfaction of the judgment rendered. Any practice, pleading, form, or mode of proceeding which may be applicable in any stage of a cause in a state court would therefore, under the section in question, in the absence of other clauses, be also applicable in a like stage of a similar cause in a Federal court. The section would embrace proceedings after judgment equally with those preceding its rendition.

The first process act of Congress, passed September 29, 1789, (1 Stat. 93, c. 21,) provided "that until further provision shall be made . . . the forms of writs and executions, except their style and *modes of process,* . . . in the circuit and district courts, in suits at common law, shall be the same in each State respectively as are now used or allowed in the supreme courts of the same."

The second process act, passed May 8, 1792, (1 Stat. 275, c. 36,) provided "that the forms of writs, executions, and other process, except their style, and the *forms and modes of proceeding* in suits, in those of common law, shall be the same as are now used in the said courts respectively, in pursuance of the act entitled 'An act to regulate processes in the courts of the United States,'" — the first process act mentioned above.

In *Wayman* v. *Southard,* 10 Wheat. 1, these statutes were considered and construed by this court. And in giving a meaning to the language "forms and modes of proceeding in suits," the court, speaking by Chief Justice Marshall, said, that it "embraces the whole progress of the suit, and every transaction in it, from its commencement to its termination, which has been already shown not to take place until the judgment shall be satisfied. It may then and ought to be understood as prescribing the conduct of the officer in the execution of process, that being a part of 'the proceedings' in the suit." 10 Wheat. 32.

There would, therefore, be good reason for the contention of the plaintiff below, that the general words of § 914 of the Revised Statutes, "forms and modes of proceeding," apply to proceedings for the enforcement of judgments, as well as to proceedings before the judgments were rendered, but for the provisions of § 916, which is § 6 of the same act of June 1, 1872, from which § 914 was taken. Section 916 is as follows:

"The party recovering a judgment in any common law cause, in any circuit or district court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the State in which such

court is held, or by any such laws hereafter enacted which may be adopted by general rules of such circuit or district court; and such courts may, from time to time, by general rules, adopt such state laws as may hereafter be in force in such State in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

This section shows that in pursuing the remedies for the enforcement of a judgment in a common law cause, recovered in a Federal court, the "forms and modes of proceeding" provided for the enforcement of a like judgment in a state court are not to be followed, unless they were prescribed by a law of the State, at the time the provisions of the section took effect; or, if subsequently prescribed by such law, until they have been adopted by a general rule of the court. In providing for remedies upon judgments, the section not only excludes the application of the provisions of § 914 to such remedies, but also indicates the extent to which remedies upon judgments furnished by state laws may be used in the Federal courts. Congress, which alone can determine the remedies which may be pursued for the enforcement of judgments in the Federal courts, as well as the procedure to be adopted in the progress of a suit, has declared its will with respect to both. The procedure in civil causes, other than those in equity and admiralty, from their commencement to final judgment, must conform, as near as may be, to the procedure *existing at the time* in like causes in the courts of record of the State in which the Federal courts are held. It must, therefore, follow subsequent changes in the procedure in like causes in the state courts. But to enforce judgments in common law causes, only such remedies can be pursued "as *are now provided* in like causes by the laws of the State"— that is, when the act of Congress on the subject, the above section, was passed or reënacted— or, if provided by subsequent laws of the State, such as have been adopted by the Federal courts.

It matters not that the remedies designated in § 916 are stated to be, to reach by execution or otherwise the property of the judgment debtor; and that proceedings under the stay law

of Nebraska are only to secure, where a stay is obtained, the personal liability of the sureties for the amount of the judgment — in the absence of a designation of any other remedies, the section is a declaration that, until adopted by a rule of the court, no other remedies prescribed by state laws shall be permitted in the Federal courts. The extent to which the authority of the Federal courts may go, in the enforcement of judgments, by resort to remedies provided by state laws in similar cases, is thus defined and limited.

Section 916, as mentioned, is taken from the act of Congress of June 1, 1872, and is reënacted in the Revised Statutes, which took effect as of December 1, 1873. The act of Nebraska of February 23, 1875, had not been adopted by any rule of the Federal court when the judgment of *Seymour* v. *Young* was rendered in the Circuit Court of the United States, November 12, 1875, or when that judgment was extended by the clerk of that court, December 2, 1875, so as to embrace the sureties on the bond given to stay execution. That act was not adopted as a rule of procedure of that court until December 30, 1876.

It follows from this construction of the two sections 914 and 916, that the act of Nebraska did not govern proceedings for the stay of execution upon that judgment, or determine the liability of the sureties on the bond or undertaking given for such stay; and that the act of the clerk extending that judgment against the sureties was without authority and void. The sale, under the execution of the property of Lamaster, one of the sureties, and the deed of the marshal to the purchaser at such sale therefore conferred no title.

The confirmation of the sale by the order of the court, did not cure the invalidity of the execution upon which it was made. The extension of the judgment against Young, so as to embrace the sureties, being a void proceeding, no subsequent action upon the sale could give it validity. A confirmation of a sale may cure mere irregularities not affecting its fairness, but not an infirmity growing out of the nullity of the judgment under which it was had.

*The judgment below must therefore be reversed, and the cause remanded for a new trial; and it is so ordered.*