CITIZENS' BANK OF WICHITA v. FARWELL et al.

(Circuit Court of Appeals, Eighth Circuit. May 29, 1893.)

No. 213.

1. APPEAL—RECORD—WAIVER OF JURY—STIPULATION.

The record of a case in the trial court contained an entry that the parties appeared by counsel, "and made and filed their agreement in writing with the clerk that this cause might be tried by the court without a jury, which agreement is in words and figures following." The agreement was then set out in full, and attached thereto were the signatures of counsel, preceded by the letters "O. K." *Held*, that this showed a sufficient compliance with Rev. St. § 649, requiring waiver of a jury to be stipulated in writing, and filed with the clerk.

2. SAME—REVIEW—HARMLESS ERROR—MISNOMER.

It is no ground for reversing a judgment against a firm that in some of the later papers in the cause one of the members, whose name is "Hannon," was called "Harmon."

3. GARNISHMENT—CIVIL SUIT—STATE PRACTICE.

Gen. St. Kan. 1889, par. 4290, provides that, where plaintiff desires to take issue on the answer of a garnishee, he shall give notice thereof, "in which case the issue shall stand for trial as a civil action," etc. *Held* that, though it is begun by attachment, the proceeding is a "civil cause," within the meaning of Rev. St. U. S. § 914, requiring the practice and pleading in the federal courts in civil causes to conform to those in the state courts in similar causes, any rule of court to the contrary notwithstanding.

4. ATTACHMENT—FEDERAL COURTS—STATE PRACTICE—RULES.

Rev. St. § 915, which provides that the federal courts may, "by general rule, adopt such state laws as may be in force in the states in which they are held in relation to attachments," does not require the rule of court adopting such laws to be promulgated in writing; and it will be presumed on appeal that such a rule has been adopted by the trial court, when it is necessary to sustain its judgment, and there is no affirmative showing to the contrary.

5. APPEAL—REVIEW—FINDING OF FACTS—SUFFICIENCY.

The judgment of the court in a case tried by it without a jury was based solely on the legal effect of a certain agreement between the parties. This agreement was not set out in the findings of fact, nor its substance stated therein, though it was apparent that the court intended that it should constitute a part of the findings. *Held*, that the judgment should be reversed, as not being sustained by the facts found.

In Error to the Circuit Court of the United States for the District of Kansas.    Reversed.

Statement by CALDWELL, Circuit Judge:

John V. Farwell & Co. commenced suit in the circuit court of the United States for the district of Kansas, second division, against the Kansas Furni-

ture Company, hereafter called the "Furniture Company," to recover the sum of $8,926.20 and interest, and sued out in said action a writ of garnishment against the Citizens' Bank of Wichita, Kan., hereafter called the "Bank." On the 5th day of March, 1891, plaintiffs recovered judgment against the furniture company for the sum of $9,843.04. Upon being served with the garnishee summons, the bank appeared, and filed an answer, denying that it was indebted to the furniture company in any sum. Issue was joined on the bank's answer, and, a jury being waived, the cause was tried by the court, which made a special finding of facts, and rendered judgment thereon in favor of the plaintiffs, and against the garnishee, for $10,988.80. The bank thereupon sued out this writ of error.

W. E. Stanley and J. E. Hume, for plaintiff in error.

C. H. Brooks, C. F. Coffin, and Edwin White Moore, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

CALDWELL, Circuit Judge, (after stating the facts as above.) It is objected by the defendants in error that the parties, or their attorneys of record, did not file with the clerk a stipulation in writing waiving a jury, as required by section 649 of the Revised Statutes of the United States; and that this court cannot therefore consider the assignment of error based on the insufficiency of the special finding of facts by the lower court to support the judgment. The record before us contains this entry:

"Thereupon, afterwards, to wit, on the 9th day of March, 1892, the said plaintiffs appeared by Edwin White Moore and Brooks & Coffin, their attorneys, and the said defendant garnishee, the Citizens' Bank of Wichita, Kansas, appears by Stanley & Hume, its said attorneys, and the parties make and file their agreement in writing with the clerk that this cause may be tried by the court without a jury, and which agreement is in words and figures following."

The agreement here referred to is properly entitled in the cause, and is spread at large upon the record. It extends to other matters besides the waiver of a jury. That part of it relating to the waiver of a jury is in these words:

"The parties appearing by their respective counsel, Messrs. Edwin White Moore and Brooks & Coffin appearing for the plaintiff, and Messrs. Stanley & Hume appearing for said defendant and said garnishee, said parties, in open court, waived a jury, and consented that said cause be tried by the court."

The signatures of counsel, preceded by the letters "O. K.," are attached to this agreement. It is in writing, and was filed with the clerk; but it said that counsel, in signing the agreement, only intended to O. K. the correctness of the record entry, and did not thereby intend to waive a jury. If counsel did not, by their signatures to this agreement or record entry,—and it is immaterial which it is called,—intend to attest the fact, in writing, that a jury had been waived, it is difficult to understand what was intended. They, of course, did not intend to mislead or deceive the court, though, if their present contention should be sustained, their action would have precisely that result; for the court acted upon the understanding that a jury had been waived in the mode required by the statute, and, acting upon that assumption, made an extended special finding of facts, which was altogether useless and unnecessary if there had been no such waiver. The distinction at-

tempted to be drawn by counsel between signing an agreement waiving a jury which is not intended to be spread upon the record and signing one that is to constitute the record entry is too subtle and refined to require any further consideration. Supervisors v. Kennicott, 103 U. S. 554–556.

In some of the papers and record entries in the cause, the plaintiffs are described as J. V. Farwell & Co., in some as J. V. Farwell et al., and in some the names of the five persons composing the firm are set out in full, with the averment that they constitute a copartnership, under the firm name of John V. Farwell & Co. In one of the latter papers or entries, the name of John K. Hannon, one of the members of the firm, appears as John K. Harmon, and a large part of a lengthy brief filed on behalf of the plaintiff in error is taken up with the contention that the cause should be reversed on account of this trifling clerical error. There is no reason to suppose the name was not written correctly in the original manuscript, but, conceding that it was not, it is an obvious clerical misprision, capable of correction from an inspection of the record, and which any court would correct upon a mere suggestion. Adams v. Law, 16 How. 144; Peale v. Phipps, 8 How. 256; Bank v. Mixter, 114 U. S. 463, 5 Sup. Ct. Rep. 944. It is to be deplored that an appellate court should be called upon to listen to an oral argument and read a lengthy brief in support of the contention that such a slight clerical or typographical error is fatal, and it would be discrediting to the administration of justice for any court to notice the alleged error further than to direct its correction.

It is assigned for error that the court had no jurisdiction of the subject-matter of the suit or the parties. This assignment of error rests upon the following ground: By the law of the state of Kansas, as it stood prior to 1889, when the plaintiff in the action desired to contest the answer of one summoned as a garnishee, he was required to file a petition, and summon the garnishee to answer thereto, as in an ordinary action at law. By an amended statute, passed in 1889, it is provided that the answer of the garnishee shall be conclusive of the facts therein stated, unless the plaintiff, within 20 days, serves upon the garnishee a notice in writing that he elects to take issue on his answer, "in which case the issue shall stand for trial as a civil action in which the affidavit on the part of the plaintiff shall be deemed the petition and the garnishee's affidavit the answer thereto." Paragraph 4290, Gen. St. Kan. 1889. The statute was amended in some other particulars, but the amendment we have particularly set out is the only one pressed upon our attention, and is the one upon which the exception is chiefly rested. The bank was summoned as garnishee after the act of 1889 took effect, and the issue between the plaintiff and the garnishee was made up, and the cause was tried, without objection, in the mode provided by that act. It is now said that the circuit court of Kansas had not by a general rule adopted the act of 1889, as required by section 915 of the Revised Statutes of the United States, and that, as a consequence, it was without juris-

diction to proceed in the mode that it did, and that its judgment is void.

Section 914 of the Revised Statutes of the United States provides that "the practice, pleading, and forms and modes of proceeding in civil causes in the circuit and district courts shall conform as near as may be to the practice, pleading, and forms and modes of proceeding existing at the time in like causes in the courts of record of the states wherein such circuit or district courts are held, any rule of court to the contrary notwithstanding."

All the modes of proceeding in civil causes are governed by this section, except "remedies by attachment or other process against the property of the defendant," and the remedies, "by execution or otherwise, to reach the property of the judgment debtor," which are governed by sections 915 and 916, respectively. Lamaster v. Keeler, 123 U. S. 376, 8 Sup. Ct. Rep. 197. Under the act of 1889, when a garnishee has been summoned, and files his answer, and the plaintiff takes issue thereon, the process of attachment, so far as relates to that issue, has performed its office, and a new action is thereby instituted, in which the plaintiff in the original suit is plaintiff and the garnishee is defendant. The statute denominates it a "civil action," and prescribes what papers shall constitute the pleadings. It is clearly a civil cause, and the practice, pleading, and forms and modes of proceedings therein must, under section 914, conform as near as may be to the statute of the state in force at the time of the trial, irrespective of any rule of court, or, in the language of that section, "any rule of court to the contrary notwithstanding." The suit grows out of the remedy and process of attachment, but it is no part of that process, any more than a suit between the plaintiff in the attachment and a third person, who intervenes and claims the attached property, can be said to be a part of the attachment process. The pleadings and forms and modes of proceeding in such suits must conform, as near as may be, to the state law in force at the time, although they may have had their origin in the use made of the "remedies by attachment or other process against the property of the defendant."

The court had jurisdiction of the subject-matter and the parties. The garnishee appeared and answered and went to trial without challenging the jurisdiction of the court, and without interposing any objection to the form or mode of proceeding. But, assuming that there are provisions of the Kansas statute of 1889 relating to attachments and garnishments which come within the purview of section 915 of the Revised Statutes, there is nothing in the record before us, in this case, to show that such provisions have not been adopted by a general rule of the circuit court of that district, as required by section 915; and, in the absence of an affirmative showing to the contrary, this court will, if necessary to support the judgment of that court, presume that they have been duly adopted. When the appellate court is required to act upon a presumption, it will adopt the presumption that up-

holds the judgment from which the appeal is taken. The presumption is that the lower court did not usurp authority, nor wrongfully exercise jurisdiction. Elliott, App. Proc. §§ 709, 717.

It is worthy of observation in this connection that section 915 does not require that the general rules adopting the state laws relating to remedies by attachment, passed subsequently to that act, shall be in writing; and there are several cases which hold, and we think rightly, that the rules of practice of a court may be sufficiently shown by its judgments, and the record of its proceedings in like cases. The records and files of a court are written memorials of its rules of practice, and may be consulted for the purpose of ascertaining what those rules are. This has been the practice from the earliest times. There is no other mode of adopting rules that can impart to them any higher sanction or authority. It is very well known that it is the common practice for circuit courts to adopt and give effect to state laws relating to attachments as soon as they go into effect, and that in many cases there is no other evidence of their adoption than the practice of the court as evidenced by its judgments, records, and files. The members of the bar seldom, if ever, search records for a formal written order adopting the state law, which, as we have seen, the act of congress does not require, but are guided by the actual practice of the court in the particular case. As the act of congress does not require the rule adopting a state law to be in writing, it is not perceived why it may not be adopted by a rule of the court promulgated orally, and the uniform practice of the court ought to be accepted as sufficient evidence of the promulgation of such a rule.

In the case of Fullerton v. Bank, 1 Pet. 603, the court said:

"It will not be contended that the practice as such can only be sustained by written rule. Written rules are unquestionably to be preferred, because their commencement, their action, and their meaning are most conveniently determined; but what want of certainty can there be where the court, by long acquiescence, has established it to be the law that the practice of the state court shall be their practice."

And in the case of Duncan's Heirs v. U. S., 7 Pet. 435, the court said:

"It is not essential that any court, in changing its practice, should do so by adoption of written rules. Its practice may be established by uniform mode of proceedings for a series of years, and this forms the law of the court. How can the practice of the court be better known or established than by its own solemn adjudication upon the subject?"

And see, to the same effect, Williams v. Bank, 2 Pet. 96; U. S. v. Stevenson, 1 Abb. (U. S.) 497; Lessees of Sellers v. Corwin, 5 Ohio, 398. There is no analogy between this case and that of Lamaster v. Keeler, supra. It appeared affirmatively in that case that the court had not adopted, by written rule or otherwise, the state law authorizing the clerk to enter judgment against sureties on stay bonds, and it did not appear that the clerk had ever before entered such a judgment, or that the court had in any other case sanctioned the practice. There is nothing in the opinion in that case which, in terms or by implication, overrules the

previous well-considered opinions of that court which we have cited.

Nothing remains to be considered in the case except the question whether the facts found are sufficient to support the judgment. It is not necessary in the determination of this question to set out in detail those findings. It is sufficient to state generally that the furniture company was indebted to the bank in the sum of $25,400, and that to secure that indebtedness, it executed, on the 11th day of January, 1888, a chattel mortgage to the bank. On the 20th of October, 1890, the bank and furniture company had an accounting, when there was found due from the furniture company to the bank, $9,145.60, for which another chattel mortgage was executed. The mortgaged property was afterwards sold and purchased by the bank, leaving, as the bank claims, a balance due on the mortgage debt. One of the special findings of the lower court is to the effect that on the 11th day of April, 1888, the bank, the furniture company, and the majority of its creditors entered into an agreement concerning the mortgaged property, "which agreement," says the special finding of facts, "is attached to the report of the referee in this case marked 'Exhibit J.'" Neither that report, nor the agreement, nor any statement of its provisions, is made part of the finding of the court, or appears elsewhere in the record. The claim of the plaintiffs to a judgment against the bank is bottomed solely on the legal effect of this agreement, and the judgment of the court below is rested upon it. Unless that agreement created a liability on the bank, it was not liable to the plaintiffs, upon the facts found, in any sum. Whether it did create a liability on the part of the bank to the plaintiffs, and, if so, the amount and nature thereof, and whether such liability is one which can be enforced by an action at law, or whether the plaintiffs' remedy is by a bill in equity against the bank, as a trustee for an accounting, can only be determined by an inspection of the instrument. Nor, without an inspection of the agreement, can it be known who are the proper parties to a bill for an accounting, if it shall turn out that that is the proper proceeding. The special finding of facts does not contain the agreement or any statement of its provisions. The court below undoubtedly supposed the agreement was embraced in, or attached to and made part of, the special findings. In its declarations of law, the judgment is rested solely on the legal effect of this agreement. The special finding of facts shows no liability on the bank independently of this agreement, and, as that is omitted from the findings, it results that the facts found do not support the judgment. The judgment of the court below is reversed, and the cause remanded, with directions to grant a new trial.