## In re GUILLIOT.

### No. 6548.

District Court, W. D. Louisiana,
Opelousas Division.

Dec. 18, 1942.

Waldo H. Dugas, of Lafayette, La., for petitioner.

William J. Guste and Schwarz, Guste, Barnett & Redmann, all of New Orleans, La., for Jaubert Bros. Inc., creditor.

PORTERIE, District Judge.

The issue before us for review is well presented by the "Statement of Questions Presented in the Application for Review", prepared for the benefit of this court by the Referee:

"The above proceeding is one of arrangement in which the debtor, Ogden C. Guilliot offered to pay his unsecured creditors 33⅓% of his indebtedness to them, upon confirmation of the arrangement, in full settlement of their claims. At the first meeting of creditors, the applicant for review herein, Jaubert Bros. Inc., filed a proof of claim with supporting statements, in the amount of $1,148.95; the proof of claim indicates on its face that it is secured by the pledge of certain life insurance policies. Jaubert Bros. Inc. demands the right to prove their entire claim as an unsecured creditor, and exercise their right of pledge to collect the balance of their account; and in that manner they would obtain payment of 100% of the debt. The debtor contends that his offer is to pay Jaubert Bros. Inc. ⅓ of the amount of its claim over and above the cash surrender value of the policies of life insurance at the present time. It was disclosed by Jaubert Bros. Inc. at the first meeting of creditors that the cash surrender value on the policies pledged amounted to $883.56. This leaves $265.39 of their claim not secured by the pledge of the policies.

"At the meeting of creditors, the Referee allowed Jaubert Bros. Inc. to vote its entire claim of $1,148.95 in favor of accepting the arrangement offer; the Referee reserving at that time the right to rule on this claim as to its participation in the cash under the offer of arrangement. The vote of the entire claim of Jaubert Bros. Inc. did not affect the outcome of the acceptance or rejection of the proposition.

"Subsequent to the meeting, the debtor, through his attorney, informed the Referee that he was making application for loans on the policies pledged to the full extent of their cash surrender value, which amount would be paid to Jaubert Bros. Inc.

"On October 9, 1942, the Referee ruled, by order made part of these proceedings, with reasons therefor attached to the order, that the claim of Jaubert Bros. Inc. should be recognized as an unsecured claim only to the extent of $265.39, and thus participate to that extent.

"The Referee's order protected the rights of Jaubert Bros. Inc. in the provision that

the debtor would not be discharged of the unpaid portion of the claim until it had paid the amount of $883.56, the cash surrender value of the said policies, to the claimant."

The following are the two paragraphs which are the subject for our interpretation:

(1) (Taken from letter addressed to all the creditors by the Referee) "Proposition of Arrangement. Debtor proposed to pay and liquidate the face value of the claims of all unsecured creditors by payment of 33⅓% thereof in full satisfaction of such indebtedness; said payment to be made immediately upon consummation of the arrangement."

(2) (Taken from Debtor's petition) "3. Your petitioner is insolvent (*or* unable to pay his debts as they mature), and proposes the following arrangement with his *unsecured* creditors: To pay thirty three and one-third per cent. (33⅓) of the full amount due on the face value of the claims of all unsecured creditors."

We believe the ruling by the Referee, though at first blush apparently quite equitable, is incorrect because of the want of the recognition of certain fundamental legal premises in the solution of the question.

■ Evidently, the exempt property of the bankrupt does not pass to the trustee. Section 6 of the Bankruptcy Act, 11 U.S. C.A. § 24, provides: "This Act [title] shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, provides: "The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, *except in so far as it is to property which is exempt, * * *.*" (Italics ours)

The law of Louisiana provides: (Act 189 of 1914, Sec. 1, as amended by Act No. 88 of 1916, Sec. 1, and Act No. 155 of 1934, Sec. 2 (Dart's La.Gen.Stats. § 4105).

"The following shall be exempt from all liability for any debt:

"(1) The proceeds, avails and dividends of all life, including fraternal and co-operative, health and accident insurance.

\*       \*       \*       \*       \*

"Provided, however, that there shall· be excepted from the provisions of this Act a debt secured by a pledge of a policy, any rights under such policy that may have been assigned, and any advance payments made on or against such policy."

We quote verbatim the explanatory paragraph from brief of creditor's counsel, as the thought is so well and tersely put: "The last stated clause excepting the debt for which a policy was pledged merely takes out of the general provisions of the exempting statute such particular debt. This was done to permit the policy which, although exempt, from the general obligations of the bankrupt's creditors, to be subject to pledge as security for a particular debt. If this excepting clause had not been inserted in the statute no debt could have been secured by a life insurance policy. This merely sustains the position of Jaubert Brothers, Inc. in being, alone, able to claim the policy aś security for its debt. Without the excepting clause the policy would not come into the possession of the trustee in bankruptcy and neither does it come into possession of the trustee with such clause."

■ Definitely, then, life insurance policies under Louisiana law are exempt.

Of course, the question has arisen before, and appears to be well settled by the jurisprudence. See Frederick v. Metropolitan Life Ins. Co., D.C., 235 F. 639, 641.

We must make a liberal quotation from the case of Holden v. Stratton, 198 U.S. 202, 214, 25 S.Ct. 656, 659, 49 L.Ed. 1018, because of the clarity of the language and the final authority of the tribunal (quoting approvingly from Steele v. Buel, 104 F. 968, at page 972, 44 C.C.A. at page 287): " 'From the organization of the Federal courts under the judiciary act of 1789, the law has been that creditors suing in these courts could not subject to execution property of their debtor exempt to him by the law of the state. Judiciary Act of 1789 (1 Stat. at L. 93, ·chap. 21); Wayman v. Southard, 10 Wheat. 1, 32, 6 L.Ed. 253, 260; Lamaster v. Keeler, 123 U.S. 376, 8 S.Ct. 197, 31 L.Ed. 238; Dartmouth Sav. Bank v. Bates, [C.C.], 44 F. 546. \* \* \* The same rule has obtained under the bankrupt acts, which have sometimes increased the.

exemptions, notably so under the act of 1867 (§ 5045, Rev.Stat.) but have never lessened or diminished them. An intention on the part of Congress to violate or abolish this wise and uniform rule, observed from the creation of our Federal system, should be made to appear by clear and unmistakable language. It will not be presumed from a doubtful or ambiguous provision fairly susceptible of any other construction.' "

The final question to be resolved is whether or not the creditor holding a debt secured by exempted property may prove his debt for the full amount and reserve the pledged property to satisfy any deficiency.

The best reasoned opinion is found in the case of In re Anderson, D.C., 11 F.2d 380, at page 381, wherein, is found the following language:

"1. The other creditors are not interested in such security and are not entitled to any part thereof. It cannot be brought into the general assets. It is something which, as a matter of grace, has been granted to the creditor.

"2. Any other rule would be unfair to the bankrupt. If he must submit to having the homestead valued, and to having such homestead, and the value thereof, applied in the first instance in reduction of the general claim which the lienholder has against the bankrupt estate, the effect of this would be to reduce the amount of the general claims against the assets in the hands of the trustee, by the amount of the value of such homestead, and would thereby increase the dividend which each such general creditor would receive. It would, in effect, be applying the homestead, in part, to the payment of the claims held by the general creditors, who held no liens. Under any such plan, the bankrupt is stripped of his exempt property at the outset. That which should be taken last is appropriated at the first. If the other course should be taken, and if all creditors, including the lienholder, should file their claims in full against the estate, each would receive a smaller percentage on his claim, but in that way, in many cases, the lienholder, receiving a percentage on the full amount of his claim, would have a modest balance only remaining unpaid to enforce against the exempt property, and the latter would be saved to the bankrupt, in accordance with the settled policy of our law.

"A debtor, for good reason, may be quite willing to give security to a particular creditor, and yet be quite unwilling that such security shall inure to the benefit of all other creditors as well. It is true, as may be urged, that when a bankrupt gives a mortgage on exempt property, he cannot prevent a foreclosure of that mortgage and the application of the exempt property in reduction of the general debt at any time before bankruptcy. This may be true, but is not necessarily persuasive here. In many cases, exact justice cannot be attained. Here there has been no foreclosure, and the circumstances are such that the court is free to act, and is called upon to adjust the rights of the parties and to marshal the assets as may be authorized by law. It often happens that it is to the interest of the lienholder, as well as that of the bankrupt, to file the claim in full in the bankruptcy proceeding and proceed against the exempt property last. The other general creditors are opposed in interest to the bankrupt. It would be to their interest to increase their dividends by the appropriation of some part of the homestead, if that could be done. Questions such as this involve a balancing of the rights of the general creditors against those of the bankrupt. By section 57 [sub.] h and section 1(23), hereinbefore referred to, [11 U.S.C.A. §§ 93, sub. h and 1(23)], the law makers, with wisdom and foresight, have resolved the question in favor of the bankrupt.

"3. The creditor itself is here in a different position from that in which it would be if the security was upon property which was not exempt, and which, if discharged from the lien, would at once swell the amount of the general assets in bankruptcy. Its debt has not yet been paid. It has taken nothing from any creditor. Its interests are such that it wishes that its claim, at the full face thereof, shall take its usual course in the bankruptcy proceedings. No creditor is in a position to say that this is unfair to him, or that his interests will be adversely affected thereby. Indeed, the creditor might at any time waive its lien on the exempt property and file its claim for the full amount thereof, and at the conclusion of the bankruptcy proceedings, the debtor might renew his mortgage to the former holder. No creditor, under such circumstances, would have any legal ground of complaint. A mortgage upon exempt property by a debtor to a creditor, without more, is a matter between them-

selves alone and does not concern other creditors."

See, also, Ivanhoe Bldg. & Loan Ass'n 'of Newark, N. J. v. Orr, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419; Robinson v. Exchange Nat. Bank of Tulsa, Okl., D.C., 28 F.Supp. 244.

This court, after the submission of this case, before reaching a final ruling, requested the attorneys on both sides, by letter, to find authorities, if there be any, making a distinction between the use and the meaning of terms in the regular procedure in bankruptcy and the arrangement in bankruptcy. No cases have been furnished us, and the only report made to the Court has been by letter from counsel for Jaubert Brothers to the effect that all the cases since arrangements in bankruptcies have been provided by amendment refer to the previous verbiage of the bankruptcy act without distinction.

The ruling by the Referee is amended, and judgment will be signed in accordance with the above opinion.