WIRE WHEEL CORPORATION OF AMERICA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26555.   Promulgated May 28, 1929.

*Hugh Satterlee, Esq.*, and *A. S. Lisenby, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

OPINION.

SIEFKIN: As we view this case it is clear that the petitioner is not liable as a transferee under section 280 of the 1926 Act. Section 15 of the New York stock corporation law, under which the Houk Manufacturing Co. and petitioner were merged in 1917, reads as follows:

> SEC. 15. *Merger.* Any domestic stock corporation and any foreign stock corporation authorized to do business in this state lawfully owning all the stock of any other stock corporation organized for, or engaged in business similar or incidental to that of the possessor corporation may file in the office of the secretary of state, under its common seal, a certificate of such ownership, and of the resolution of its board of directors to merge such other corporation, and thereupon it shall acquire and become, and be possessed of all the estate, property, rights, privileges and franchises of such other corporation, and they shall vest in and be held and enjoyed by it as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by the board of directors of such possessor corporation, and in its name, *but without prejudice to any liabilities of such other corporation or the rights of any creditors thereof.* Any bridge corporation may be merged under this section with any railroad corporation which shall have acquired the right by contract to run its cars over the bridge of such bridge corporation.

Section 15 is now substantially incorporated in section 85 of the laws of 1923.

Where a corporation is merged into a second corporation under this statute, the first corporation's " existence is retained for the one purpose of carrying out in good faith the reservation in the statute of the rights of the creditors thereof * * * the * * * company may be sued," and a creditor " obtaining judgment against the * * * company, may by execution or otherwise, reach the assets of such company as though the merger had never taken place." *Irvine* v. *New York Edison Co.*, 207 N. Y. 425; 101 N. E. 358. That case held that the merging corporation, which continued in existence, was not liable to the creditors of the merged corporation. The action was not an equitable one, but the court cites *Trotter* v. *Lisman*, 199 N. Y. 497; 92 N. E. 1052, to the effect that before such creditors may seek the aid of equity against the merging corporation they must recover judgment against the debtor corporation and show the return of execution thereon unsatisfied. That the *Irvine* case, *supra*, did not lightly reach such conclusion is shown by excerpt from that opinion as follows:

The provisions of the merger statute and of the consolidation statute were considered together by the Legislature in 1890, and they have since been considered by it from time to time. There would seem to be little or no objection and much reason for making a corporation which takes all of the assets of other corporations by consolidation or merger liable for the indebtedness of such consolidated or merged corporation. The acceptance of such property could be made an assent to such liab.lity. The whole matter was, however, clearly before the Legislature for its consideration, and it was considered by it, and it made a corporation accepting the assets of other corporations under the statute authorizing the consolidation of corporations liable for the indebtedness of the corporations so consolidated. It declined so to do in the case of corporations transferring assets under the merger statute. The rights of creditors were not overlooked, as the Legislature expressly provided that the rights of such creditors should be preserved and that the merger should be without prejudice as to them.

    *       *       *       *       *       *       *

* * * The statute, which is the authority for the transfer of the property, if any, from the Block Company to the gas company, does not provide that the possessor company shall assume the indebtedness of the merged company, but expressly provides that the rights of cred.tors of the merged company are preserved. The statute was not carelessly drawn, and the omission to make the possessor company liable for the debts of the merged company was not an oversight. It is the duty of the court to enforce the provisions of the statute without reading into it affirmative provisions. The plaintiff does not claim to recover in equ'ty; but, if he did, he would be required to first take other steps preliminary thereto.

Such decision is the settled law of New York State. The later decision in the case of *Syracuse Lighting Co.* v. *Maryland Casualty Co.*, 226 N. Y. 25; 122 N. E. 723, while it holds the merging corporation for a liability of the merged corporation, merely confirms the holding in the *Irvine* case, *supra*, for in the later decision the pre-

liminary step of obtaining judgment against the merged corporation, followed by return of execution thereon unsatisfied, had been taken.

The Federal courts also require that the remedies against a transferor be exhausted to no avail before proceedings can be initiated against a transferee. See *Swan Land & Cattle Co.* v. *Frank*, 148 U. S. 603, which decision was cited in the report of the Senate Finance Committee (p. 29) on section 280 of the Revenue Act of 1926. In *Pierce* v. *United States*, 255 U. S. 398, the court said:

A judgment creditor's bill is in essence an equitable execution comparable to proceedings supplementary to execution. See *Ex. parte Boyd*, 105 U. S. 647.

\*      \*      \*      \*      \*      \*      \*

It is true that the bill to reach and apply the assets distributed among the stockholders cannot, as a matter of equity jurisdiction and procedure, be filed unt.l the claim has been reduced to judgment and the execution thereon has been returned unsatisfied, *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371.

Thus it seems clear that were it not for section 280 the respondent could not have proceeded against petitioner in equity under the trust fund theory until he had exhausted available remedies against the Houk Company. It seems equally clear that he has not exhausted such remedies. The facts show that deficiency letters were mailed to the Houk Company and such notices were followed by assessments. We are not impressed with respondent's contention that the assessments were the equivalents of judgment. Even if we assume an assessment to be the equivalent of a judgment, it seems clear from the above cases that (aside from section 280) the respondent had not complied with the prerequisites necessary to maintain a suit against the petitioner. The Houk Company still remained in existence. The cases cited and discussed show that not only must judgment be obtained against it, but that attempt must be made to collect under such judgment. The record does not show any attempt at collection under the assessment, for, so far as we know, notice and demand for payment was never served on that company.

There remains section 280, which provides as follows:

(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refund) :

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

(2) The liability of a fiduciary under section 3467 of the Revised Statutes in respect of the payment of any such tax from the estate of the taxpayer. Any

such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

In *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401, concerning this provision we said:

By this section it will be noted that no new liability is created on the part of the transferee, but merely a method of enforcement of such liability as is already his at law or in equity by reason of the circumstances under which he acquired the property of the taxpayer or by reason of any prior lien attaching to the property at the time of its acquirement.

Respecting this section we quote from the Senate Finance Committee's report, pp. 29 and 30:

* * * It is probable that under existing law the Government may proceed in equity by suit against the transferee if the transferor no longer exists (that is, in the case of a corporation, is dissolved, or in the case of an individual, is dead), and if the liability of the transferor has not been judicially established by action against the taxpayer before dissolution or death— *Updike* v. *United States*, decided Circuit Court of Appeals, eighth circuit, December 1, 1925. If, however, the transferee is still in existence the Government must proceed to obtain judgment against the transferor in an action at law and then proceed against the transferee in equity by a creditor's bill to satisfy the judgment. The creditor's bill is also available if the taxpayer has ceased to exist, but his tax liability was liquidated by judicial action prior to the dissolution or death.—*Swan Land and Cattle Co.* v. *Frank*, 148 U. S. 603. In all the above cases the transferee is not liable for the tax of the transferor, but is by reason of the receipt of the assets subject to an independent liability in his own person and payable out of his own estate, arising under the trust fund doctrine or some similar theory.

* * * * * * *

Under existing law proceedings for the enforcement of liability such as those heretofore discussed are solely by court proceedings. No proceedings before the board for the redetermination of a deficiency and for the ultimate enforcement by assessment and distraint may be had.

It is the purpose of the committee's amendment to provide for the enforcement of such liability to the Government by the procedure provided in the act for the enforcement of tax deficiencies. It is not proposed, however, to define or change existing liability. The section merely provides that if the liability of the transferee exists under other law then that liability is to be enforced according to " the new procedure applicable to tax deficiencies."

Manifestly this section was designed only to allow, and does only allow, the respondent an additional means of procedure against a transferee only if available remedies against a transferor would be unavailing. The same conditions precedent must be met in such a proceeding, however, as must be met before an action in equity to enforce the same liability. No new liability is created and the Act does not purport to provide for a proceeding against the transferee before action would otherwise lie against such transferee. On the record before us, it is apparent that the respondent is attempting a

short cut not contemplated by the statute. Since there is no liability, judgment must be entered for the petitioner.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

---

Milliken, concurring in the result: The applicability of the statute of limitations results in there being no liability on the part of the transferee for the tax of the transferor. Such being true, I deem it unnecessary to go into the unusual New York statute upon which the opinion is based.