Tena Napoli DeSalvo (Mrs. Vincent) v. Commissioner.
De Salvo v. Commissioner
Docket No. 47430.
United States Tax Court
T.C. Memo 1955-76; 1955 Tax Ct. Memo LEXIS 263; 14 T.C.M. (CCH) 249; T.C.M. (RIA) 55076; March 31, 1955
William R. Frazier, Esq., and M. H. Myerson, Esq., for the petitioner. Lee C. Smith, Esq., and Hugh F. Culverhouse, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined that petitioner was liable as transferee of her husband's assets for deficiencies in his income taxes and fraud penalties as follows: Income Tax
50% Fraud
Year
Deficiencies
Penalties
1947
$ 3,737.54
$1,868.77
1948
3,686.24
1,843.12
1949
7,836.87
3,918.44
1950
1,140.00
570.00
Totals
$16,400.65
$8,200.33 The liability of petitioner's husband for these deficiencies is not contested. The sole questions for our decision are whether respondent has established petitioner's liability as a transferee under section 311 of the Internal Revenue *264 Code of 1939 and the extent, if any, of that liability. Findings of Fact Some of the facts have been stipulated and are found accordingly. Tena Napoli DeSalvo, hereinafter sometimes called petitioner, is an individual who resides in Jacksonville, Florida. At all times material herein she was the wife of Vincent F. DeSalvo. Petitioner did not report income or file Federal income tax returns for the years 1917 to 1951, inclusive. DeSalvo filed Federal income tax returns for the years 1947 to 1950, inclusive, with the collector for the district of Florida. Prior to 1941, DeSalvo had been employed by various lottery organizations in the Jacksonville, Florida, area. In 1941, he entered into a lottery partnership known as the K-Y Bank Lottery. DeSalvo withdrew from that partnership on January 11, 1947, but remained as an employee until March 1948. From April 1948 to November 1950, DeSalvo conducted his own numbers lottery in Jacksonville, Florida. On November 1, 1950, he entered into another lottery partnership which was in existence at least until November 1, 1951. DeSalvo reported taxable income for the years 1945 through 1950, inclusive, in the following amounts: Year
Taxable Income
1945
$20,257.07
1946
33,747.14
1947
530.32
1948 (loss)
923.76
1949
1,224.02
1950
24,910.15
Total
$79,744.94
*265 DeSalvo had on hand undeposited cash upon the dates and in the amounts as follows: Year
Amount
January 1, 1947
$7,000.00
December 31, 1948
3,500.00
December 31, 1949
3,500.00
December 31, 1950
5,000.00
The examining agent used the following amounts of estimated cash on hand in computing DeSalvo's unreported income: Year
Amount
December 31, 1946
$ 7,000.00
December 31, 1947
8,000.00
December 31, 1948
11,000.00
December 31, 1949
13,000.00
December 31, 1950
5,000.00
All of the deficiencies in tax, penalties and interest of DeSalvo, as provided by law, remain due and owing the United States, other than the sum of $779.42. On or about February 3, 1947, DeSalvo and petitioner purchased a home at 2341 Hendricks Avenue, Jacksonville, Florida, from one William H. Jude and wife for a total consideration of $23,000, taking title thereto as tenants by the entirety. On or about September 9, 1950, DeSalvo and petitioner sold the above property to I. C. Smith and wife for a total consideration of $23,000, paid in part by a second mortgage of $4,000. On September 11, 1950, the DeSalvos used a part of the proceeds from the sale of their *266 Hendricks Avenue property to purchase a home from Harold H. Crum and wife, located at 749 Goodwin Street, Jacksonville, Florida, for $15,200, taking title as tenants by the entirety. On or about June 4, 1946, the DeSalvos acquired the East half of Lot 9, Block 98, Riverside, in Jacksonville, Florida, from Matilda S. Dunn and husband for a total consideration of $1,200, taking title as tenants by the entirety. On November 28, 1950, Etta DeSalvo, a widow, Vincent's mother, conveyed to the DeSalvos the West half of Lot 10, and East 15 feet of Lot 9, Block 98, Riverside. During the years 1947 to 1951, inclusive, petitioner maintained savings and checking accounts with the American National Bank and the Atlantic National Bank of Jacksonville, Florida, in her individual name. Only petitioner was authorized to draw upon these bank accounts, and no one except petitioner did draw upon these accounts. Petitioner made all the deposits in these accounts. On April 3, 1945, petitioner opened Savings Account No. XXXX at the American National Bank, with an initial deposit of $4,566. Numerous deposits and withdrawals were made from petitioner's Account No. XXXX during the period April 3, 1945, until *267 the account was closed on January 20, 1953. The year-end balances in this account between December 31, 1945, and January 20, 1953, were as follows: Year
Balance
December 31, 1945
$ 8,128.54
December 31, 1946
10,644.47
December 31, 1947
2,171.52
December 31, 1948
262.34
December 31, 1949
3,966.90
December 31, 1950
1,689.49
December 31, 1951
7,276.14
January 20, 1953
28.92
Petitioner also maintained a checking account with the American National Bank during this period. The following is a summary of all deposits and withdrawals made by petitioner from Account No. XXXX and from her American National Bank checking account during the years 1947 to 1952, inclusive: American National Bank
Account No. XXXX
Checking Account
Year
Deposits
Withdrawals
Deposits
Withdrawals
1947
$ 18,427.05
$ 26,900.00
$ 6,869.75
$ 6,595.87
1948
2,970.82
4,880.00
6,589.25
6,852.67
1949
7,719.66
4,000.00
6,924.56
6,794.89
1950
123,817.34
126,109.85
9,717.24
9,576.95
1951
11,915.60
6,400.00
9,372.88
5,610.51
1952
4,500.00
11,022.66
14,793.85
Totals
$164,850.47
$172,789.85
$50,496.34
$50,224.74
*268 Petitioner used the funds deposited in her American National Bank checking account primarily for household expenses and occasionally to meet expenses incurred in her husband's lottery business. All withdrawals from Account No. XXXX made by petitioner were returned to DeSalvo for use in his lottery business during the years he was engaged in that business. There were no deposits made to Account No. XXXX after DeSalvo ceased to be engaged in the lottery business on October 31, 1951. Petitioner deposited $500 in an account at the Atlantic National Bank, Jacksonville, Florida, during 1951. All of the deposits in the above bank accounts were made with funds transferred to petitioner by DeSalvo. The majority, if not all, of DeSalvo's earnings were deposited in these accounts. Petitioner opened a checking account in the Barnett National Bank of Jacksonville, Florida, on March 22, 1946. Petitioner was the only person authorized to draw checks on this account. Petitioner used this account for household expenses. The balance in petitioner's Barnett National Bank checking account on December 31, 1946 was $1,588.13. In 1947 she deposited $550 in this account and withdrew $2,138.13. *269 The account was closed on August 14, 1947. Petitioner had a savings account with the Barnett National Bank prior to her marriage to DeSalvo, opened on February 29, 1944 with a deposit of $20. Petitioner withdrew $2,479.86 from this account on March 22, 1946, and deposited that sum in her Barnett checking account. DeSalvo opened a savings account in the American National Bank, Account No. XXXX, on April 27, 1948, and closed it on January 30, 1953, by a final withdrawal of $500.62. The following is a summary of deposits and withdrawals from Account No. XXXX from April 27, 1948 to December 31, 1952: Dec. 31st
Year
Deposits
Withdrawals
Balance
1948
$2,657.04
$ 837.00
$1,820.04
1949
665.35
2,485.39
1950
4,368.45
6,154.02
691.82
1951
5,039.27
5,731.09
1952
346.85
5,400.00
677.94
The sum of $5,400 withdrawn by DeSalvo from the above account in 1952 was deposited in petitioner's checking account in the American National Bank. That sum was used by petitioner to purchase a leasehold in her name alone on a parking lot at the corner of Pearl and Church Streets, Jacksonville, Florida. The purchase of the parking lot in petitioner's name *270 was without consideration between DeSalvo and petitioner. The proceeds from the operation of the parking lot are petitioner's property. Petitioner used these proceeds for the support of herself, DeSalvo and their family. Petitioner withdrew $4,500 on June 24, 1952 from Account No. XXXX in the American National Bank and returned this sum to DeSalvo. DeSalvo thereafter tendered this sum with an offer in compromise of his tax liabilities for the years here in question. DeSalvo reported the theft of a safe from his home to the Inspector of Detectives for the City of Jacksonville on February 5, 1950. As a result of this theft, DeSalvo lost an estimated $8,000 in cash. On May 20 and June 23, 1953, petitioner paid $1,050 and $15.13, respectively, of the assessment made against her by respondent. Opinion Respondent has apparently abandoned his position that certain real property acquired in the joint names of petitioner and her taxpayer-husband as tenants by the entirety is subject to transferee liability. He contends only that petitioner is liable as a transferee for the taxpayer's uncontested liability for income taxes and deficiencies as a result of the deposit in her various *271 bank accounts of more than $200,000 admittedly received from him and the purchase in her name alone of a parking lot with the sum of $5,400 withdrawn from the taxpayer's bank account while he was liable for unpaid taxes. A transferee's liability in equity is secondary. Respondent's burden under section 311, Internal Revenue Code of 1939, requires proof that all reasonably possible remedies against the taxpayer-transferor have first been exhausted. Anne Gatto, 20 T.C. 830; Wire Wheel Corporation of America, 16 B.T.A. 737, affd. (C.A. 2) 46 Fed. (2d) 1013. Notwithstanding petitioner's denial, respondent requests a finding that prior to the institution of the present proceeding all steps were taken by him to exhaust remedies against the transferor including notice, demand, distraint and the filing of a lien. There is nothing on the face of the record to support respondent's request nor any part of it, nor to refute petitioner's contention, and we have accordingly been unable to make the requested finding. Its absence is fatal to respondent's determination without the necessity of considering any of the other questions likewise raised by petitioner. *272 Anne Gatto, supra; Wire Wheel Corporation of America, supra.
In view of certain payments made by petitioner on account of her proposed deficiency. Decision will be entered under Rule 50.